HEARD NOVEMBER TERM, 1877.

## FABER *vs.* POLICE.

A devise to trustees for the use of A "during his life, and after his death in trust for his lawful issue living at the time of his death; and if he should die leaving no issue," (there being none) then over to his residuary devisees and legatees, gives to the remaindermen not a vested but a contingent remainder.

A contingent remainder held under a devise may be defeated by a feoffment with livery of seizin from the tenant for life, and a release from the heir of the testator gives the purchaser good title.

A devise to trustees, their heirs and assigns, "in trust for the use of A during his life," with contingent remainders over, vests, under the Statute of Uses, the legal estate in A.

BEFORE REED, J., AT CHARLESTON, JUNE, 1877.

This was an action by John L. Faber against J. G. Police to recover damages for the breach of a contract for the sale of a lot of land in the city of Charleston.

The case was referred to Samuel Lord, Jr., Esq., to take testimony and report the facts, together with his opinion on the title tendered by the plaintiff to the defendant.

The following is the report of the Referee:

This action was brought to recover damages sustained by the plaintiff in consequence of the refusal of the defendant to comply with the contract made by him on the 19th day of July, 1875, for the purchase of the lot of land on the East side of King street, in the city of Charleston, more particularly described in the complaint.

The answer admits the making of the contract, as alleged in the complaint, and the tender of a deed of conveyance to the defendant on the 27th July, 1875. The only defense set up is, that the plaintiff had not an estate in fee simple in the premises.

The question thus presented arises under the will of Christian Henry Faber, who was seized of the lot in question at the time of his death, and who, by his last will, admitted to probate in 1828, devised it to his three nephews, Henry Frederick Faber, Joseph W. Faber and John C. Faber, their heirs and assigns, in trust for the use of his son John Lewis Faber during his life, and after his death in trust for his lawful issue then living; and if he should die without leaving issue at the time of his death, then to his residuary legatees, Henry F. Faber, Joseph W. Faber, John C. Faber, Maria Christiana Faber, Catharine E. Bennett, Christina Faber and Catharine Faber.

The testator died leaving his will in full force, and leaving his widow Anna Margaret Faber and his son John Lewis Faber, and leaving no other issue.

Henry F. Faber, one of the trustees, died about the year 1839.

On the 30th June, 1843, Joseph W. Faber, John C. Faber, Maria Christiana Faber and Catharine E. Bennett, two of whom (Joseph W. and John C. Faber) were surviving trustees under the will, in consideration of regard and affection and of one dollar paid them by John Lewis Faber, the life tenant, released to him and his heirs and assigns all their interest in the lot in question as residuary devisees of Christian Henry Faber.

On the 1st July, 1843, John Lewis Faber, being then of full age and in possession of the premises, conveyed them, by deed of feoffment and livery of seizin, to Lawrence H. Folker in fee, who, on the 2d July, 1843, reconveyed the same to him and his heirs.

On the 8th day of the same month of July Mrs. Ann Margaret Faber by deed released all her right in the premises to John Lewis Faber. John Lewis Faber, at the time of the execution of this deed, was unmarried. He afterwards married, and has now three children living, the eldest of whom is nineteen and the youngest seventeen years of age. Of the remaindermen, to take in default of issue, living at his death, all have released their interest in the property except Christina and Catharine Faber.

On the 6th February, 1851, John Lewis Faber, in consideration of $6,000, conveyed the premises to his mother, Ann Margaret Faber, who died intestate in 1858, leaving the said John Lewis Faber as sole heir. No letters of administration upon her estate have been taken out.

The objections urged by the defendant to the plaintiff's title were: First, that by the deed of feoffment with livery of seizin, made by John Lewis Faber to L. H. Folker, the contingent remainders created by the will of Christian Henry Faber were not destroyed; and, second, that until administration upon the estate of Ann Margaret Faber has been had the plaintiff cannot convey the premises.

I find, as conclusions of law:

1. That under the will of Christian Henry Faber the legal estate to this lot vested, by the Statute of Uses, in the *cestuis que use*, the testator not having imposed on the trustees any duties which in any way interfered with the existence of legal estates in the different

beneficiaries named in the will.—*Ramsay* vs. *Marsh*, 2 McC., 252 ; *Webster* vs. *Cooper*, 14 How., (U. S. S. C.,) 488.

2. That the limitations by the will of Christian Henry Faber to the issue of John Lewis Faber constituted contingent remainders. They are to the issue who shall be living at his death; and until that event happens it must remain perfectly uncertain who will be the persons to take. This is the definition of one species of contingent remainders.

3. That by the deed of feoffment to L. H. Folker, the contingent remainders to the issue of John Lewis Faber and to the residuary devisees were effectually barred and destroyed by the reconveyance to John Lewis Faber. He took a fee simple, subject only to the right of his mother, Ann Margaret Faber, as one of the heirs-at-law of her husband. By her release to him his title became absolute and unquestionable to hold the premises.—*Redfern* vs. *Middleton*, Rice, 459.

4. That John Lewis Faber having, upon the death of his mother, taken possession of the property and since that time held it as heir, a purchaser from him would take it discharged from the debts of his mother, although no letters of administration have been taken out upon her estate.

5. That the conveyance tendered by the plaintiff to the defendant would have conveyed to him an absolute estate in the premises.

6. That the plaintiff is entitled to recover from the defendant the sum of twenty-five dollars for his refusal to comply with his contract.

The defendant excepted to the report on the following grounds :

1. That said Referee erred in holding that, under the will of Christian Henry Faber, the legal estate to the land vested by the Statute of Uses in the *cestuis que use.*

2. That said Referee erred in holding that the limitations by the will of Christian Henry Faber to the issue of John Lewis Faber constituted contingent remainders.

3. That said Referee erred in holding that by the deed of feoffment to L. H. Folker the remainders to the issue of John Lewis Faber and to the residuary devisees were barred and destroyed, and that John Lewis Faber subsequently acquired a valid title to said land.

4. That said Referee erred in holding that the conveyance tendered by the plaintiff to the defendant would have conveyed to him an absolute estate in the premises.

5. That said Referee erred in holding that the plaintiff is entitled to recover from the defendant the sum of twenty-five dollars for his refusal to comply with his contract.

His Honor the Circuit Judge overruled the exceptions and confirmed the report of the Referee.

The defendant appealed on the following grounds:

1. Because under the will of Christian Henry Faber the legal estate in the land did not vest by the Statute of Uses in the *cestuis que use*.

2. Because the limitations under said will to the issue of John Lewis Faber and to the residuary devisees and legatees of the testator did not constitute contingent remainders.

3. Because the deed of feoffment with livery of seizin to L. H. Folker did not bar and destroy the remainders to the issue of John Lewis Faber and to the residuary devisees under said will.

4. Because His Honor erred in overruling the exceptions to the Referee's report filed herein by the defendant.

5. Because the title tendered by the plaintiff would not convey a fee simple estate.

*Ficken*, for appellant:

The estate limited to the residuary devisees and legatees of testator in the event of the death of the life tenant without issue constituted *vested* remainders, and, consequently, could not be destroyed by the deed of feoffment with livery of seizin executed by the life tenant.

"The struggle with the Courts has been for that construction which tends to support the remainder by giving it a vested character."—4 Kent, 204; *Croxall* vs. *Shererd*, 5 Wall., 268; *Seabrook* vs. *Gregg*, 2 S. C., 78.

"The law favors vested estates; and no remainder will be construed to be contingent which may, consistently with the *intention*, be deemed vested."—4 Kent, 203.

"A remainder limited upon an estate tail is held to be vested, though it must be uncertain whether it will ever take place."—*Ibid*, 204.

"The present capacity of taking effect in possession if the posses·sion were to become vacant, and not the certainty that the possession will become vacant before the estate limited in remainder determines, universally distinguishes a vested remainder from one that is contingent."—2 Blackstone's Com., 168; 2 Cruise's Digest, 270.

"It is the uncertainty of the right of enjoyment and not the uncertainty of its actual enjoyment which renders a remainder contingent."— *Williamson* vs. *Field,* 2 Sandf. Ch., 533.

"A limitation after a power of appointment as to the use of A for life, remainder to such use as A shall appoint, and in default of appointment remainder to B, is a vested remainder, though liable to be divested by the execution of the power."—4 Kent, 204.

"A devise to A in fee *if* or *when* he attains the age of twenty-one years becomes a vested remainder, provided the will contains an intermediate disposition of the estate or of the rents and profits during the minority of A, or if it directed the estate to go over in the event of A dying under age."—*Doe* vs. *Underdown,* Willes, 293; Boraston's case, 3 Co., 19; *Goodtitle* vs. *Whitby,* 1 Burr., 228; *Doe* vs. *Lea,* 3 T. R., 41; *Bromfield* vs. *Crowder,* 4 Bos. & P., 313; *Doe* vs. *Moore,* 14 East, 601; 4 Kent, 206.

"Though it may be uncertain whether a remainder will ever take effect in possession, it will nevertheless be a vested remainder if the interest be fixed. * * * * * * * * It is the present capacity of taking effect in possession, if the possession were to become vacant, and not the certainty that the possession will become vacant before the estate limited in remainder determines, that distinguishes a vested from a contingent remainder."—4 Kent, 203.

"In a case of a devise to A and the heirs of his body, and in default thereof to B, or in the case of a devise to B and after his death without male issue to C, and after his death without male issue to D, and if D die without male issue, none of these prior devisees being living, to E in fee, here the remainder to B in the one case and to E in the other is vested."—*Badger* vs. *Lloyd,* 1 Salk., 232; 1 Ld. Raym., 523 S. C.; *Ives* vs. *Legge,* 3 T. R., 488, note.

"A remainder is vested in interest where the person is in being and ascertained who will, if he lives, have an absolute and immediate right to the possession of the land upon the ceasing or failure of all the precedent estates, provided the estate limited to him by

the remainder shall so long continue."—*Hawley* vs. *James*, 5 Paige, 466; 2 Minor's Institutes, 337; Smith on Real and Personal Property, 228.

The deed of feoffment with livery of seizin did not operate to destroy the remainders to the issue of life tenant, because the legal estate was vested in the trustees and they were charged with the duty of preserving said remainders.

"To preserve the contingent remainders from the operation of the feoffment, recourse has been had to the creation of *trustees to preserve the contingent remainders* during the life of the tenant for life, notwithstanding any determination of the particular estate prematurely by forfeiture or otherwise. * * * * * * * *

"The legal estate limited to trustees during the tenant's life is a vested remainder in trust, existing between the beneficial freehold and the contingent remainder, and the limitation in trust is not executed by the Statute of Uses, and the legal estate in such cases remains in the trustees. The tenant for life has a legal estate and the remainder of the same character and for the same period is vested in the trustees; and if the particular estate determines otherwise than by the death of the tenant, the estate of the trustees, *eo instanti*, takes effect, and, as particular estate in possession, it supports the remainder depending on the contingency."—4 Kent, 256; 1 Preston on Est., 241; *Chapman* vs. *Blissell*, Talb. Cases, 145; *Redfern* vs. *Middleton*, Rice, 466; 2 Black. Com., 170; *Vanderheyden* vs. *Crandall*, 2 Denio, 17; *Habergham* vs. *Vincent*, 2 Ves., Jr., 233.

In equity the tenant for life of a trust cannot, even by a fine, destroy the contingent remainder dependent thereon, and it will only operate on the estate he can lawfully grant. A Court of equity does not countenance the destruction of contingent remainders.—4 Kent, 255.

Where the intention is manifest, as in the case under consideration, it is not necessary that the trust to preserve contingent remainders should be expressed in so many words. There is no authority requiring it to be so expressed. The legal estate being in trustees and no express trust declared, the manifest intention defines the trust.

In this State, before the adoption of the Constitution of 1868, a trust to A for a married woman was not executed by the statute, although no special duty was assigned A. Why was this so?

Because the law discovered the trust and defined the duty of trustee where no duty was declared. That duty was to hold during coverture of the married woman. So in the case before us, although the trust is not in direct words to preserve contingent remainders, yet there is a trust. The law detects the expectancy of issue and defines the duty of the trustees to be the preservation for such issue of the contingent remainders.

"The rule is, that trustees take that quantity of interest only which the *purposes* of the trust *require* and the *instrument* creating it *permits*. The legal estate is in them so long as the execution of the trust requires it, and no longer, and then it vests in the person beneficially entitled."—*Wagstaff* vs. *Smith*, 9 Ves., 520; *Doe* vs. *Scott*, 4 Bing., 505; *Doe* vs. *Willan*, 2 B. & Ald., 84; *Doe* vs. *Nichols*, 1 B. & C., 336; *Doe* vs. *Edlin*, 4 Ad. & El., 582; *Doe* vs. *Simpson*, 5 East, 162; *Doe* vs. *Needs*, 2 M. & W., 129.

"The intention is to prevail. If technical terms are employed to express and denote this, they must have their legal significance, unless on the face of the instrument it is apparent that an intention was purposed different from that which their use would so intimate."—*Seabrook* vs. *Gregg*, 2 S. C.; *Brownsword* vs. *Edwards*, 2 Ves., Sr., 249.

"Trusts are governed by the intention of the party."—Viner's Abridg., 493.

"In the construction of a trust the *intent* of the party is to govern, and Courts of equity have always in cases of trusts taken the same rules of expounding trusts and of pursuing the intention of the parties therein as in cases of wills, and that even in point of limitations of estates, where the letter is to be as strictly pursued as in any case."—*Sheldon* vs. *Dormer*, 2 Vern. Ch., 310.

"Where the legal estate is vested in trustees, that will be sufficient to support the limitations of contingent remainders, and there will be no necessity for any other particular estate of freehold; nor need the remainders vest at the time when the preceding trust limitations expire."—2 Black. Com., 168.

"There is one case which forms an exception to the rule that a preceding particular estate of freehold is requisite to support contingent limitations, and that is where the legal estate is vested in trustees. The estate will continue in that instance, notwithstanding the failure of an intermediate life estate, until the persons who were to take the contingent remainders should come *in esse*."—4 Kent, 247.

It is said to be a rule in equity, that if one comes into possession of trust property with notice of the trust he shall be considered as a trustee and with respect to that property bound to the execution of the trust.—2 Mad. Ch., 125; *Chaplin* vs. *Givens*, Rice Eq., 154.

If executrix, tenant for life, purchase land and have the titles made to the estate of the testator, this will be *prima facie* a declaration of trust by the executrix in favor of the heirs.— *Garrett* vs. *Garrett*, 1 Strob. Eq., 100.

If land or personalty be devised or settled to or upon a married woman for her separate use without the precaution of vesting it in trustees, the intention will be effected in equity, and the rights of the wife will be protected by the conversion of her husband into a trustee for her.—*Franklin* vs. *Creyon*, Harper Eq., 205; *Joyce* vs. *Gunnels*, 2 Rich. Eq., 268.

*Lesesne & Lesesne*, contra:

1. That under the will of Christian Henry Faber the legal estate to this lot vested, by the Statute of Uses, in the *cestuis que use*, the testator not having imposed on the trustees any duties which interfered with the vesting of the legal estates in the beneficiaries named in the will.

The Statute of 27 Henry VIII, Chap. X, commonly known as the Statute of Uses, made of force in this State, (Gen. Stat., Chap. XCIII, § 2, p. 465,) enacts as follows:

" Where any person or persons shall be seized of and in any lands, tenements, rents, reversions, remainders or other hereditaments, to the use, confidence or trust of any other person or persons, or of any body politic, by reason of any bargain, sale, feoffment, covenant, contract, agreement, will or otherwise, the person, persons or body politic that have, or shall have, any such use, confidence or trust in fee simple, fee tail, for term of life or for years, or otherwise, or any use, confidence or trust in remainder or reversion, shall be deemed and adjudged in lawful seizure, estate and possession of and in the same lands, tenements, rents, reversions, remainders and hereditaments, with their appurtenances, to all intents, constructions and purposes in law, of and in such like estate as they had or shall have in use, trust or confidence of or in the same."

In the case of *Ramsay* vs. *Marsh*, (2 McC., 152,) the statute is construed, and a devise identical with the one in question *held to vest the legal estate in the cestui que use.*

The same construction is also given in the case of _Webster_ vs. _Cooper_, 14 How., (U. S. S. C.,) 488.

2. That the limitations by the will of Christian Henry Faber to the issue of John Lewis Faber constituted contingent remainders. They are to the issue who shall be living at his death, and until that event happens it must remain perfectly uncertain who will be the persons to take. This is the definition of one species of contingent remainders.

2 Black. Comm., 169, gives this definition: "Contingent or executory remainders (whereby no present interest passes) are where the estate in remainder is limited to take effect either to a dubious and uncertain _person_ or upon a dubious and uncertain event, so that the particular estate may chance to be determined and the remainder never take effect."

Fearne, p. 1, Sec. 1, at p. 1, gives four classes of contingent remainders, and at p. 9, (4th American, from 10th Eng. ed.,) Sec. 11, 4: "Where a remainder is limited to a person not ascertained, or not in being at the time when such limitation is made." "So if an estate be limited to two for life, remainder to the survivor of them in fee, the remainder is contingent, for it is uncertain who will be the survivor."

4 Kent, (margin,) 206, after definition, adds: "It is not the uncertainty of enjoyment in future, but the uncertainty of the right to that enjoyment, which makes the difference between a vested and contingent interest." And on page 203: "It is the present _capacity_ of taking effect in possession, if the possession were to become vacant, and not the certainty that the possession will become vacant before the estate limited in remainder determines, that distinguished a vested from a contingent remainder." And in note c, p. 208, gives the definition of the New York revised statutes: "A remainder, says the statute, is contingent whilst the person to whom or the event upon which it is limited to take effect remains uncertain." And in same note: "Lord Ch. J. Willes, in the opinion which he gave before the House of Lords, on behalf of all the Judges, in the case of _Parkhurst_ vs. _Smith_, (Willes, 327,) declared that there were but two sorts of contingent remainders: (1.) Where the person to whom the remainder was limited was not _in esse._ (2.) Where the commencement of the remainder depended on some matter collateral to the determination of the particular estate."

3. That by the deed of feoffment to L. H. Folker the contingent remainders to the issue of John Lewis Faber and to the residuary devisees were effectually barred and destroyed, and by the reconveyance to John Lewis Faber he took a fee simple, subject only to the right of his mother, Ann Margaret Faber, as one of the heirs-at-law of her husband. By her release to him his right became absolute and unquestionable to hold the premises.—*Redfern* vs. *Middleton,* Rice, 459.

To adopt a different construction would be to overturn ·one of the common assurances of title in this State and to unsettle the title to much of the property therein. In the language of Mr. Petigru, who examined· and approved the title to· this very lot: "This whole matter was solemnly settled in the case of *Dehon* vs. *Redfern,* (Rice, 459,) and cannot be drawn in question."

The principle established by this case has not been questioned by our Courts to the present time. In *Seabrook* vs. *Gregg* (2 S. C., 68,) the decision is rested solely on the ground that the remainders are vested and not contingent, and by no word is the authority of *Redfern* vs. *Dehon* questioned. Indeed, it follows from the reasoning employed in that case that had the remainders been held to be contingent they would have been necessarily barred by the feoffment of the life tenant.

At the death of the testator, and also at the time of the feoffment to Folker, there were no issue of John Lewis Faber *in being* in whom the remainders could vest, nor could any estate commence in the persons who were to take in default of issue, for by the terms of the devise their interest depended on the contingency of John Lewis's death without issue. When the life estate was destroyed there was no one *in esse* in whom the estate could vest in remainder, and the fee, of necessity, reverted to the heirs of the grantor.

November 22, 1878. The opinion of the Court was delivered by

McIver, A. J. C. H. Faber, by his last will and testament, devised the land in question to certain trustees in trust for the use· of his son, John Lewis Faber, for his life, and from and immediately after the death of his son in trust for the lawful issue of said son living at the time of his death ; and in case of his death without leaving issue living at the time of his death, then to his residuary legatees and devisees.

The testator died leaving his widow and his son John Lewis Faber as his only heirs-at-law. On the 1st of July, 1843, John Lewis Faber, being then of age and in possession of the premises, conveyed the same by deed of feoffment and livery of seizin to one Folker, who on the next day reconveyed the same to the said John Lewis Faber in fee simple, and a few days thereafter the widow of the testator released all her right in the premises to John Lewis Faber. At the time of the execution of this deed John Lewis Faber had never been married, but he subsequently married and now has three children, all of whom are minors. On the 6th of February, 1851, John Lewis Faber conveyed the premises to his mother, who died intestate some time in the year 1858, leaving as her sole heir-at-law her son, the said John Lewis Faber. No letters of administration upon her estate have ever been taken out. On the 19th of July, 1875, the defendant, J. G. Police, contracted to purchase from the plaintiff, John Lewis Faber, the said premises, but afterwards declined to accept the title upon the ground that Faber could not convey a fee simple interest. This action was then brought to recover damages for the breach of such contract, the real object being to obtain the decision of the Court as to the validity of the title.

The appellant contends: 1st. That the estate limited to the issue of John Lewis Faber is vested and not a contingent remainder, and therefore the remainder was not barred by the deed of feoffment and livery of seizin. Questions of this kind are involved in no little difficulty and uncertainty, owing mainly, as we think, to the efforts which the Courts have made to construe limitations so as to constitute vested instead of contingent remainders, the rule being, as stated by Kent, (4 Com., 203,) that "the law favors vested estates and no remainder will be construed to be contingent which may, *consistently with the intention,* be deemed vested." This rule, by its very terms, admits, as it should do, the paramount importance of the *intention* of the testator, which must necessarily override every other rule and be the governing principle, otherwise the Court instead of the testator would make the will. Hence, when the testator's intention can be discovered it must necessarily be carried out, unless it is inconsistent with the law of the land. In looking for this intention we must be guided by the words which the testator has used, reading them in the light of established principles of law. Looking, then, at the clause of the

will under consideration in this light, we think it clear that the remainders created are contingent and not vested remainders. It is very clear, from the language used, that the testator did not intend that the issue should take the estate in remainder absolutely and at all events, but only on a contingency—that of their surviving their father; and it is equally clear that he did not intend that the residuary legatees and devisees should take the estate in remainder absolutely and at all events, but only on a contingency—that of the son dying without leaving issue living at the time of his death. There is no language in the will which would convey the idea that the testator intended that either class of remaindermen should be invested with an absolute right with only the enjoyment in possession postponed to a future period, but their right as well as their enjoyment in possession is not only postponed to a future period but is made to depend upon an uncertain event. This manifest intention of the testator is not only not inconsistent with any of the rules of law, but, on the contrary, as we shall see, is in strict conformity with such rules. According to the elementary writers a vested remainder is one which is limited to an ascertained person in being, whose *right* to the estate is fixed and certain, and does not depend upon the happening of any future event, but whose *enjoyment in possession* is postponed to some future time. A contingent remainder, on the other hand, is one which is limited to a person not in being or not ascertained; or, if limited to an ascertained person, it is so limited that his *right* to the estate depends upon some contingency in the future. So that the most marked distinction between the two kinds of remainders is that in the one case the *right to the estate* is fixed and certain, though the *right* to the *possession* is deferred to some future period; while in the other the *right to the estate* as well as the *right to the possession* of such estate is not only deferred to a future period but is dependent upon the happening of some future contingency. As it has been well expressed, "it is not the uncertainty of the estate in the future but the uncertainty of *the right* to such enjoyment which marks the difference between a contingent and a vested remainder."

Keeping in mind these principles, which are so well established as to need no citations of authority to support them, and remembering that the estate in remainder, whether vested or contingent, must necessarily have been created at the same time that the particular estate upon which it rests passed out of the testator, we will find no

difficulty in determining the nature of the estate in remainder created by the will under consideration. These estates, as well the particular estate for the life of John Lewis Faber as the estate in remainder to his issue, and in default of such issue to the residuary legatees and devisees, passed out of the testator at the time of his death,—the time when his will, the instrument by which the estates were created, speaks. Then it was that these estates were created, and to that point of time must we look to determine their character. It is very clear that at that time it was wholly uncertain who would be the persons to take at the termination of the particular estate. The life tenant then had no issue, and it was, of course, uncertain whether he would ever have any ; and as to the issue which he has subsequently had, it is yet uncertain whether any of them will be living at his death, and the same uncertainty exists as to whether the residuary legatees and devisees will ever have the right to take. It is manifest, therefore, that at the time these estates were created, as well as now, it is altogether uncertain, not merely who will, at the termination of the life estate, be entitled to enjoy in possession the remainder, but who has now *the right* to the future enjoyment of such estate. The present issue cannot say that they have any such fixed and certain right, because their right depends upon a future contingency,—that of the life tenant dying leaving lawful issue,—and they may all die before the life tenant. Nor can the residuary legatees claim any such right, for their right also depends upon a future contingency,—the death of the life tenant without leaving lawful issue,—and they cannot claim that they have now a fixed and certain right to the possession when such possession shall become vacant by the death of the life tenant. One of the tests laid down in the books by which we may ascertain whether a remainder is vested or contingent is to inquire whether the person claiming such remainder, being *sui juris*, could, by uniting with the owner of the particular estate, convey a fee simple title. If he could, such a remainder must be regarded as vested ; otherwise it is contingent. For if the owner of the right to the immediate possession unites with the owner of the right to the future possession when such immediate possession shall become vacant in conveying the property, then the whole estate, present as well as future, is well conveyed. But if the owner of the right to the future possession is not ascertained, or if his right depends upon the happening of a future event, such right to the future possession could not be well

conveyed, and the grantee would necessarily take an imperfect title.

Subjecting this case to this test, it must be apparent that the remainders are not vested, for neither class of remaindermen could, by uniting with the life tenant, convey a good title. The issue of the son could not, because if the life tenant should survive such issue their conveyance would not carry the title in remainder; and the residuary legatees and devisees could not, because if the life tenant should die leaving any issue their conveyance would not carry the title in remainder, and, therefore, the property would not be well conveyed. As Harper, Ch., says in *Dehon* vs. *Redfern*, (Dud. Eq., 118,) in speaking of remainders like those under consideration: "They were to the children who should be living at the death of the daughters respectively, or to the children of those who had died leaving children. Until the death of the daughters it must remain perfectly uncertain who will be the persons to take, and this is the definition of one species of contingent remainders." So here the remainder is to the issue of John Lewis Faber "living at the time of his death;" and in default of such issue, to the residuary legatees and devisees. Until the death of John Lewis Faber it must remain perfectly uncertain who will be the persons to take, and hence the remainders are contingent. If so, then, it necessarily follows, upon the authority of *Redfern* vs. *Middleton*, (Rice, 459,) in which the Court of Errors adopted the reasoning of Chancellor Harper in his circuit decree in *Dehon* vs. *Redfern*, (Dud., 115,) that the contingent remainders to the issue of John Lewis Faber, and in default of such issue to the residuary legatees and devisees, were barred by the deed of feoffment and livery of seizin to Folker, and by his reconveyance to John Lewis Faber and the release of Mrs. Ann Margaret Faber of all her interest the absolute title was perfected in the said John Lewis Faber.

But, second, it is argued by the appellant that, even if the remainders be construed to be contingent and not vested, yet the deed of feoffment and livery of seizin could not bar such remainders, because the legal estate was vested in the trustees. This proposition might be admitted if it were true that the legal estate *was* in the trustees. It becomes necessary, therefore, to consider that question. The rule undoubtedly is, that where there is a conveyance to one for the use of another, and the trustee is charged with no duty which renders it necessary that the legal estate should remain in him to enable him prop-

erly to perform such duty, the Statute of Uses executes the use and carries the legal title to the *cestui que use.*—*Ramsey* vs. *Marsh,* 2 McC., 252; *Laurens* vs. *Jenny,* 1 Spear., 356; *McNish* vs. *Guerard,* 4 Strob. Eq., 66. By the terms of the will under consideration it does not appear that the trustees are charged with any duty whatsoever. The language is " in trust to and for the use, benefit and behoof of my son John Lewis Faber, for and during the term of his natural life and no longer; and from and immediately after the death of my said son, then in trust to and for the lawful issue of my said son living at the time of his death; * * * and should my said son die without leaving lawfully-begotten issue living at the time of his death, then and in that case I give, devise and bequeath all and singular the lots of land, &c., * * * unto my residuary devisees and legatees, their heirs and assigns forever, to be equally divided between them share and share alike." There is no provision that the trustees shall receive the rents and incomes of the property and pay them over to the son or to his issue after his death, nor is there any provision that the trustees shall have the estate for the sole and separate use of any of the issue who might happen to be married women; in fact, no duty whatsoever is imposed upon the trustees.

It is argued, however, that though the will does not in terms create a trust to preserve the contingent remainders, yet that such a trust may be implied. We know of no authority for such a position, and none has been cited. We are at a loss to conceive by what right a Court could undertake to add to the words of a will, by which additional trusts to those which the testator has seen fit to declare should be raised. It is very true that in some cases where no trusts whatever are declared a Court of equity will imply a trust from the conduct and relations of the parties, as where one purchases lands with the money of another and takes title in his own name, or where one comes into the possession of trust property with notice of the trust, or where, prior to the Constitution of 1868, property was given for the sole and separate use of a married woman. But where the owner of property in disposing of it either by deed or will declares the trusts upon which he desires it to be held, we are unable to see by what authority a Court could undertake to add to the trust so declared. We think, therefore, upon principle, as well as upon express authority, especially the case of *Ramsey* vs. *Marsh, supra,* where the trusts declared were very much

the same as in the case now under consideration, that the legal title to the premises in question was, by the operation of the Statute of Uses, vested in the *cestui que use*. The other exception taken to the judgment below, that, until administration upon the estate of Mrs. Faber, the plaintiff could not convey the premises, was not insisted upon in the argument here, and, therefore, we infer that it was abandoned. But if we are wrong in this inference we may say that we do not think this exception would avail the appellant. Mrs. Faber died in 1858, and up to this time no claims have been set up against her estate, so far as we are informed by the record. But, certainly, if appellant had accepted the title when tendered, and debts against the estate of Mrs. Faber should afterwards have been set up, he would have been protected in his title by the Statute of 3 and 4 William and Mary, Chap. XIV, 2 Stat., 535. This, therefore, constituted no valid objection to the title.

The judgment of the Circuit Court is affirmed.

*Haskell,* A. J., concurred.

WILLARD, C. J. I regret that we are compelled to give efficacy to an act of wrong on the part of the life tenant in destroying the remainders and to that extent defeating the intention of the testator. This effect, originally dependent upon purely technical grounds, has become embodied in the laws of our State, and we have no power to deny its force. I am satisfied that at the time of the alienation the remainders were contingent, issue not having been born. As it regards the question whether the limitation to issue living at the death of the first taker gave a remainder that could not vest upon the birth of issue, I do not deem it necessary at the present time to pass upon it. Such a view is not necessarily precluded by *Gregg* vs. *Seabrook*, but still I think that counsel should be heard on that case before that *conclusion* is reached.