The **FEDERAL LAND BANK OF CO-LUMBIA,** a corporation, Plaintiff,

v.

**Ida Walker WOOD, individually and as Executrix of the Last Will and Testament of Edward Charles Wood, Deceased, Defendants.**

**Civ. A. No. 70-752.**

United States District Court,
D. South Carolina,
Rock Hill Division.

Nov. 2, 1970.

On Motion for Relief from Order
Feb. 18, 1971.

Melvin L. Roberts, York, S. C., for appellants.

Carroll M. Pitts, Jr., Rock Hill, S. C., Melvin B. McKeown, Jr., York, S. C., for appellee, Federal Land Bank of Columbia, etc.

James D. McCoy, III, Asst. U. S. Atty., for appellees, United States of America and others.

## ORDER

HEMPHILL, District Judge.

The above entitled cause was commenced in the Court of Common Pleas for York County on May 26, 1970, for the purposes of foreclosing a real estate mortgage. The defendant, United States of America, removed the cause to Federal Court as authorized by statute. It appears that all proper and necessary parties are properly before the court. The matter was submitted to the court on an agreed Stipulation of Facts and came on for hearing before the court on October 16, 1970. By agreement of counsel the following facts were stipulated:

Edward Charles Wood was the owner in fee during his lifetime as to all the twelve (12) tracts totaling 497.8 acres of land described in the Complaint and during his lifetime on November 24, 1965, gave a valid first mortgage to secure a principal indebtedness of Fifty-two Thousand and No/100 ($52,000.00) Dollars to the plaintiff, The Federal Land Bank of Columbia, a corporation. That there is now due and owing on said mortgage indebtedness the sum of Forty-one Thousand Eight Hundred Thirty-one and 92/100 ($41,831.92) Dollars principal as of February 26, 1970, with daily interest thereafter at the rate of $6.-9592 per day, which principal and interest constitutes a first lien.

That Edward Charles Wood died testate April 2, 1966, and his widow, the defendant, Ida Walker Wood, was duly appointed April 5, 1966, and is now acting as Executrix. That there is now due and owing to the defendant, The United States of America (Internal Revenue Service) for inheritance taxes the sum of One Thousand Four Hundred Fifty-one and 48/100 ($1,451.48) Dollars with statutory interest after March 7, 1969, which constitutes a second lien on the after-described property.

That thereafter on September 15, 1967, the defendants, Ida Walker Wood, Charles Kenneth Wood, and Jewell Wood Hall, executed to the defendant, the United States of America (acting through the Farmers Home Administration, United States Department of Agriculture), a promissory note in the amount of Fifteen Thousand Five Hundred and No/100 ($15,500.00) Dollars, and gave as security for such loan a Crop and Chattel Mortgage, and real estate mortgage, copies of said note and the security agreements were attached to the Stipulation of Facts and to the pleadings. That there is now due and owing to the defendant, the United States of America (acting through the Farmers Home Administration, United States Department of Agriculture), the sum of Thirteen Thousand Three Hundred Ninety-four and 08/100 ($13,394.08) Dollars principal and Nineteen and 82/100 ($19.82) Dollars interest with daily interest accruing after August 14, 1970, at the rate of $1.1009 per day and said principal and interest constitutes a third lien on said property.

That a foreclosure action was commenced against Ida W. Wood, Charles K. Wood and Jewell W. Hall April 17, 1970, by United States of America, Civil

Action No. 70–297. That action has been consolidated with the instant case by Order dated September 9, 1970. The instant action was instituted to foreclose the real estate mortgage of the plaintiff, The Federal Land Bank of Columbia, and, to determine all issues, it is necessary to determine the interest, if any, of any unknown or unborn persons who have or could claim an interest in said land. Accordingly, John Doe was joined as a party defendant and Carroll M. Pitts, Jr., was appointed Guardian ad Litem and is acting in such capacity to protect any interest the unknown and/or unborn persons may have in said property.

The Stipulation of Facts in this matter leaves no doubt that the mortgage given by the Testator to the plaintiff and the tax lien of the United States are valid and that the plaintiff and the United States are entitled to a decree of this court requiring that the mortgaged property be sold. Because the mortgage to Farmers Home Administration was granted by the individual defendants and because it appears that the mortgaged property is worth very substantially more than the indebtedness, it is necessary that the interests taken by the individual defendants be determined in order that the proceeds can be properly dispersed.

Edward Charles Wood owned the real estate covered by the mortgages in fee simple. By the terms of his Last Will and Testament he left that property using the following language:

"ITEM II. I will and devise all the real estate of which I may die seized and possessed unto my beloved wife, Ida Walker Wood, to be hers for and during the term of her natural life; and upon the death of my said wife I will and devise said real estate unto my two children, Charles Kenneth Wood and Jewell Wood Hall, share and share alike, PROVIDED, HOWEVER, that if either of my said two children should predecease my said wife, without leaving a child or children, of which such child is the natural parent, then and in such event, I will and direct that the share of my said real estate which would have gone to such predeceased child shall go directly to my surviving child, absolutely and in fee; PROVIDED, FURTHER, HOWEVER, That if either of my said children should predecease my wife leaving a child or children of which such child was the natural parent, then and in such event, the share that such child or children would have taken, had such child or children survived my wife, shall go in fee to such natural child or children of either of my children who might predecease my wife. It is my specific intention by the devise of my real estate, as hereinabove set forth and the language used, to express such devise to specifically and absolutely eliminate any adopted child or adopted children or step-child or step-children of either of my children from taking any interest in my said real estate, in the event of the happening of the contingencies hereinabove set forth."

There is agreement among the parties that Ida Walker Wood took a life estate in the property. At that point, however, the agreement ends. The plaintiff and the United States argue that the remainder to the two children is vested subject to divestment with alternative gifts over which constitute executory interests. The Guardian ad Litem for unknown and unborn persons urges that the remainder given Charles Kenneth Wood and Jewell Wood Hall is contingent upon their surviving their mother Ida Walker Wood. The contention of the named beneficiaries is that the remainder is vested and in fee simple, the later clauses being of doubtful import intended only to insure that adopted and step-grandchildren took no interest in the property and cannot have the effect of cutting down the remainder in fee granted Charles Kenneth Wood and Jewell Wood Hall.

It is clear that the rights of the unborn children of the defendant Charles Kenneth Wood and Jewell Wood Hall, if those children indeed take any interest under Item II of the Will of Edward Charles Wood, will be effected by this

litigation. By order of this court a respected member of the York County bar was appointed Guardian ad Litem to represent all unknown and unborn persons having claim to the property. The question arises as to whether or not the court has jurisdiction to adjudicate the rights, of unborn, who are not represented by one of the class to which they belong. In the case at issue, representation by one of the class is not possible.

In the case of Caine v. Griffin, 232 S.C. 562, 103 S.E.2d 37 (1958), the court quoting from the decision of Bofil v. Fisher, 3 Rich.Eq. 1, 24 S.C. Equity 1 (1860) stated:

> But the question is whether the Court has the power, by its decrees, to alienate the contingent titles of unborn remaindermen, who, from the nature of things, cannot be made parties or be represented in the proceedings before the Court . . . To say that the Court could not under circumstances like these convey away the fee, would be to assert a doctrine that would render conditional limitations and contingent remainders an intolerable evil to a growing and prosperous community. Thus to shackle estates without the power of relief, unless every person having a contingent and possible interest could be brought before the Court, as a party complainant or defendant, according to the usual forms and ordinary practice of the Court, would be to sacrifice the rights and interests of the present generation to those of posterity, and of citizens to aliens. If the whole property of the country were thus situated, it is obvious that all improvement and advance would be completely checked. And this check upon progress and improvements would be in direct proportion to the extent to which this state of things exists. . . . Is there no power in the State, by which the titles of estates may be unfettered from the contingent claims of unborn remainder-men and their rights not extinguished but transferred from the property itself to a fund arising from the sale of the property? I think there should be; I think there is.

■ This language convinces the court that it has power to determine the rights of the unborn children. It should be further pointed out that the appointed Guardian ad Litem has fully stated and urged the claim of the unborn children.

■ In construing the provisions of a Will every effort must be made to determine the intention of the Testator and to carry out such intention. Citizens and Southern National Bank of S. C. v. Cleveland, 200 S.C. 373, 20 S.E.2d 811 (1942). It must be remembered, however, that in determining the intention of the Testator primary resort must be had to the language used in the instrument.[1] Where the language of the Will is vague or ambiguous the circumstances surrounding the execution of the Will are considered in determining the intention.[2] That intention must be found in the language used by the Testator as explained by the circumstances to avoid violation of the statute requiring Wills to be in writing.[3] The pertinent inquiry is indeed the disposition of the property which has been made, not the disposition of it which economic or other considerations and circumstances indicate he should have made of it.

Item II of the Will of Edward Charles Wood as above set forth unquestionably gives Ida Walker Wood a life estate in the property. The language "upon the death of my said wife I will and devise said real estate unto my two children, Charles Kenneth Wood and Jewell Wood Hall, share and share alike" would give Charles Kenneth Wood and Jewell Wood Hall the remainder in fee simple. How-

---

1. White v. White, 241 S.C. 181, 127 S.E. 2d 627 (1962); Shelley v. Shelley, 244 S.C. 598, 137 S.E.2d 851 (1964); S. C. National Bank of Charleston v. Arrington, 252 S.C. 1, 165 S.E.2d 77 (1968).

2. Citizens & Southern Nat. Bank v. Cleveland, 20 S.E.2d 811 (1942).

3. Id.

ever, the item contains two further provisos. The effect of those provisos must be determined.

In the South Carolina case of Dobson v. Smith, 213 S.C. 15, 48 S.E.2d 607 (1948), the Will contained the following language:

> Item Two: I give, devise and bequeath to my three daughters aforesaid, Sophie E. Dobson, Marion May Dobson and Grace Edith Dobson, all the real property of which I shall die seized and possessed or to which I may be entitled at my death, the same to remain intact for the use of my said three daughters, or any one or two of them while single—it being my purpose especially to provide for my single daughter or daughters, but upon the marriage or death of my last single daughter, then the said real property shall be divided equally between and among my said three daughters, share and share alike, the child or children of any pre-deceased child or children to take the parent's share.

> Item Three: It is my will that upon the marriage of any one or two of my said daughters, she or they so marrying shall not share in the profits or income from said real property until the marriage or death of my last single daughter.

The court in construing the Will held that the daughters took a defeasible fee in remainder and were unable to convey title in fee simple absolute.

In characterizing the estate devised to the child or children of any pre-deceased child or children, the court said that such was "an executory devise (equivalent of an alternative remainder) and will shift the remainder in fee from the heirs, devisees or grantees of a predeceased daughter to her child or children if any, which accords with the testamentary intention expressed. The result is a defeasible fee in remainder in the daughters, who are respondents, and the appellants should not be forced to take the risk of the defeasance, however improbable it appears from existing facts."

This court is of the opinion that the *Dobson* case together with the case of Andrews v. Roye, 12 Rich. 536 (1860) compels the conclusion that the unborn children of Charles Kenneth Wood and Jewell Wood Hall in fact have a legally recognizable interest in the property which must be protected by this court.

The exact nature of the interest, whether it be a contingent remainder is not so easy a question. Whether a remainder is vested subject to divestment or contingent is often a difficult question which depends largely upon the form and wording of the grant rather than its substance. In this case, the court is unable to determine what if any difference it makes whether the interest of the unborn children is a contingent remainder or an executory interest.

The exact nature of the remainder interest held by Charles Kenneth Wood and Jewell Wood Hall appears to depend on the contingency that they survive Ida Walker Wood. However, an examination of the case law of South Carolina reveals that this is not the case. One of the earliest cases to discuss the distinction between contingent and vested remainders is Faber v. Police, 10 S.C. 376, wherein the following test was set forth:

> According to the elementary writers a vested remainder is one which is limited to an ascertained person in being, whose right to the estate is fixed and certain, and does not depend upon the happenings of any future event, but whose enjoyment in possession is postponed to some future time. A contingent remainder, on the other hand, is one which is limited to a person not being or not ascertained, or, if limited to an ascertained person, it is so limited that his right to the estate depends upon some contingency in the future. So that the most marked distinction between the two kinds of remainders is that in one case the right to the estate is fixed and certain, though the right to the possession is deferred to some future period; while in the other the right to the estate as well as the right to the possession of

such estate is not only deferred to a future period, but is dependent upon the happenings of some future contingency.

Under this test it would appear that the remainder possessed by Charles Kenneth Wood and Jewell Wood Hall is vested. It is limited to ascertained persons in being whose right to the estate is fixed and certain. It is clear that this right to the estate does not depend upon the happening of any future event. While it is true that a future event such as the death of either remainderman could deprive that remainderman of the right of possession and further ownership of the remainder interest such an event has no effect on the remainderman's right to his interest in the estate at this time. That right is already fixed and it in no way depends on his surviving the life tenant. Therefore, under the *Faber* test the remainder interest possessed by Charles Kenneth Wood and Jewell Wood Hall is vested and not contingent on the happening of any future event.

■ There are many other cases in South Carolina dealing with the distinctions between contingent remainders and vested remainders. However, the case of Walker v. Alverson, 87 S.C. 55, 68 S.E. 966, is directly in point and negates the necessity of discussing myriad other cases. In the *Walker* case a devise was made to the spouse of the testator for life and then over to a named remainder. There was, however, a further provision that should the named remainder predecease the life tenant, the real property was to go over to another named remainder. The issue was whether the interest of the first remainder was that of a contingent remainder or a vested remainder subject to being divested and the court held that the interest of the first remainder was a vested remainder subject to divestment. This case very clearly states the law in South Carolina and is supported by the following cases: Rutledge v. Fishburne, 66 S.C. 155, 44 S.E. 564, 97 Am.St.Rep. 757; Pearson v. Easterling, 107 S.C. 265, 92 S.E. 619, Ann.Cas.1918D, 980; Tindal v. Rich-

bourg, 91 S.C. 404, 74 S.E. 932; Brantley v. Bittle, 72 S.C. 179, 51 S.E. 561; Fishburne v. Sigwald, 79 S.C. 551, 60 S.E. 1105; Buist v. Walton, 104 S.C. 95, 88 S.E. 357; White v. White, 241 S.C. 181, 127 S.E.2d 627; Peoples National Bank of Greenville v. Hable, 243 S.C. 502, 134 S.E.2d 763. Therefore, it appears that the state of the title of the real estate devised to Ida Walker Wood and her two named children is a life estate in Ida Walker Wood and a vested remainder subject to divestment in Charles Kenneth Wood and Jewell Wood Hall with executory interests in the unborn children as well as Charles Kenneth Wood and Jewell Wood Hall.

The defendants, Ida Walker Wood, Charles Kenneth Wood and Jewell Wood Hall, argue that the specific intention of the testator was expressed in the last sentence of Item II of his Will and that the testator's intention by the use of the language in Item II was merely to eliminate any adopted child or step-child from taking any interest in the testator's real estate. At the time of the execution of the Will the testator's daughter was married to the father of three children whom she considered adopting. The testator appears to have liked neither the father nor the children. It is noted that this sentence continues by adding "in the event of the happening of the contingencies hereinabove set forth" and by this language it is apparent that the testator reaffirmed the disposition of his property as set forth in Item II, including the contingent disposition of his property. While the testator undoubtedly intended to exclude adopted or step-children, the language expresses an undeniable intention to keep the property within the blood lines of the family. It is also to be noted that by Item III of his will the testator disposed of his personal property by giving the same to his wife and two children as tenants in common, again with alternate dispositions but in case of the personal property the alternate dispositions were contingent upon the testator's wife or children predeceasing the testator. The dis-

position of the testator's personal property in the manner set forth in Item III of the testator's will clearly shows that the testator intended to provide for alternate dispositions of his property upon the occurrence of certain contingencies, and it is clear that if the said testator had meant for the defendants, Charles Kenneth Wood and Jewell Wood Hall, to take an absolute fee simple title in the real estate, subject only to the life estate of the wife he could have left the remainder in the real estate to his children who survived him. It is, therefore, the opinion of the court that the Will of Edward Charles Wood did not vest an indefeasible remainder in the defendants, Charles Kenneth Wood and Jewell Wood Hall. The real estate mortgage given by the defendants, Ida Walker Wood, Charles Kenneth Wood and Jewell Wood Hall, to the United States of America (acting through the Farmers Home Administration, United States Department of Agriculture) conveyed by way of mortgage only such interest as the said defendants had in the real property.

This court also notes that, if it was the intention of the testator that the property remain in the bloodlines of the testator, that such intent could be most easily defeated by a ruling vesting the property in the life tenant with the declaration that the son and daughter are vested with a remainder in fee. Under such circumstance, nothing would prevent the three of them from conveying, or devising to whom they pleased, nor an adopted child of either from inheriting. Thus the defeat.

■■■■ It is well settled at this time that executory interests cannot be destroyed by any conveyance made by a predecessor to the title. 31 C.J.S. Estates § 122. It is also settled that the entire life estate may be mortgaged, First National Bank of Springfield v. Hutson, 142 S.C. 239, 140 S.E. 596 (1927). Cases such as E. A. Beall Co. v. Weston, 83 S.C. 491, 65 S.E. 823 (1909) in which it was held that contingent remainders can be mortgaged compel the

conclusion that remainders vested subject to divestment can likewise be mortgaged. Therefore the mortgage given to Farmers Home Administration conveyed a valid interest in the real estate to the extent that the individual defendants herein had such interest, but no more.

Because the interest of the unborn remaindermen must be protected, it is necessary that all the lands covered by the mortgage to F.H.A. be sold in order that the interests encumbered by the mortgage can be evaluated, and the debt of the named defendants paid. The court would point out that if the note to F.H.A. were satisfied by the named defendants it would be unnecessary to sell all of the property at foreclosure, rather only such part as would satisfy the Farm Bureau and United States tax obligations. In the event the individual defendants satisfy the F.H.A. note, prior to the same ordered hereinafter, the court will, upon their motion, modify its order accordingly.

Therefore, upon consideration of the Stipulation of Facts and the findings herein, it is,

*Ordered:*

1. That the plaintiff have judgment against the estate of Edward Charles Wood in the amount of $41,831.92, principal as of February 26, 1970, with daily interest thereafter at the rate of $6.9592 per day, which principal and interest constitute a first lien.

2. That there is now due and owing to the defendant, the United States of America on the Internal Revenue Service tax lien for inheritance taxes the sum of $1,451.48 with statutory interest after March 7, 1969, which constitutes a second lien.

3. That the defendant United States of America have judgment against the defendants Ida Walker Wood, Charles Kenneth Wood and Jewell Wood Hall in the amount of $13,394.08, principal, and $19.82 interest, with a daily interest accrual after August 14, 1970, at the rate of $1.1009 per day, which constitutes a third lien on said property.

4. That the court does not think it necessary to order the sale of the personal property subject to the United States of America's foreclosure action at this time, since it is felt by the parties that the sale of real estate, which is subject to the first lien of the plaintiff and of the second and third liens of the defendant United States of America, should be sufficient to satisfy the liens in full; however, this finding does not preclude the United States of America from applying for such action should the sale of all real estate subject to the defendant United States of America's mortgage not be sufficient to satisfy its mortgage liens.

5. After public notices hereinafter provided, the said mortgaged premises described in the complaint shall be sold by the United States Marshal for the District of South Carolina at public auction at the York County Courthouse, York, South Carolina, during the usual hours of public sale on the first sales day in December next, or the earliest possible subsequent sales day.

6. The United States Marshal is appointed sales officer and directed to sell the real estate subject to the plaintiff's mortgage lien tract by tract, selling each tract singularly, until each of the twelve (12) tracts are sold.

7. The terms of the sale shall be payment by cash or certified check, payable to the United States Marshal, and unless the plaintiff or the defendant United States of America is the successful bidder, said successful bidder will be required to deposit immediately as evidence of his good faith, cash or certified check in the amount of five percent (5%) of his bid.

8. That the plaintiff and any defendant herein may become a purchaser at the foreclosure sale.

9. The plaintiff and the defendant United States of America are authorized to submit a credit bid or bids, and if either party is the successful bidder for any or all property, the amount of its bid, after allocation of the expenses of the sale as hereinafter provided shall be applied to the indebtedness due to the plaintiff and then to the defendant United States of America, in the order of priorities as herein provided.

10. Should the successful bidder fail to comply with his or its bid within thirty (30) days of the date of the bid, the deposit of five percent (5%) required by the terms of this order shall be forfeited, and the United States Marshal, in that event, shall immediately re-advertise and re-sell the said property without further order of this court at the earliest possible sales day thereafter on the same terms and conditions as herein provided, and at the risk of the defaulting bidder. The plaintiff or the defendant United States of America may become the purchaser of the mortgaged premises at any re-sale required to be conducted by the Marshal.

11. Upon compliance by the purchaser or purchasers with the terms of the bid or bids for the aforedescribed property, and upon confirmation by the court of the reports of the sales as herein specified, the United States Marshal will make, execute and deliver to the purchaser or purchasers of the twelve (12) tracts of property subject to this foreclosure action, a good and sufficient deed of conveyance in fee simple; and the purchaser or purchasers of the aforementioned real estate shall be let into possession of the premises forthwith upon production of the deed of conveyance to be delivered to said purchaser or purchasers by the United States Marshal following confirmation by the court of the Report of Sale.

12. Upon completion of the sale of property, the costs and expenses of this foreclosure action and the sale as herein provided, shall be deducted and paid by the United States Marshal, including a fee of $150.00 to Carroll M. Pitts, Jr., as guardian.ad litem which sum the court finds to be reasonable.

13. The Marshal shall then apply proceeds of the sale of the real estate as follows:

(a) First, to the lien of the plaintiff, The Federal Land Bank of Columbia, in the amount of $41,731.92 as of February 26, 1970, with additional interest accruing at the rate of $6.9592 per day.

(b) Second, to the lien of the United States of America in the sum of $1,451.48 with statutory interest after March 7, 1969, in satisfaction of its inheritance tax lien.

(c) The balance, if any, to be held by the United States Marshal, subject to further Order of this court, as a determination will be made concerning the proportionate share of the defendants Ida Walker Wood, Charles Kenneth Wood and Jewell Wood Hall, to the excess, after payment of costs and the first two lien holders as set forth above, which will be applied to the payment of the mortgage lien of the defendant United States of America and as attorneys' fees to the plaintiff's attorney in an amount to be set.

14. In the event the next proceeds of the sale of the property herein involved is not found to be sufficient to pay the indebtedness herein due and payable to the United States of America by the defendants Ida Walker Wood, Charles Kenneth Wood and Jewell Wood Hall, the court must order sale of the personal property subject to the mortgage lien of the defendant United States of America.

15. That upon the sale of the said premises the plaintiff's mortgage and the mortgage of the United States of America and the lien of the United States of America for estate taxes be thereupon foreclosed, and the defendants herein and each of them, and all persons whomsoever claiming by, through or under them, or any of them, be and they are forever barred and foreclosed of all right, title, interest and equity of redemption in and to the said premises herein ordered to be sold, or any part thereof.

16. This court shall retain jurisdiction for the entry of such Order as may be appropriate as to any such event and any deficiency decree which might be sought by the defendant United States of America.

And it is so ordered.

### On Motion for Relief from Order

This matter is before the court upon the motion of the Wood defendants seeking certain relief from the order of this court in this matter dated November 2, 1970. The relief sought is leave to file an amended answer raising new matter which would aid defendants on two scores. Because the sale heretofore ordered, as a practical matter, does work severe hardship on the defendants the court has given the defendants' petition long and serious consideration.

The Wood defendants, by their proposed answer, now seek recovery by Ida Walker Wood personally of expenses of the estate of her husband, the testator who owned the land herein involved, which Ida Walker Wood paid from her own funds. It is alleged that these payments total $52,000.00 and that payment should be ordered from the proceeds of the sale required by the order of November 2, 1970. The Wood defendants argue that at the time of the payments by Ida Wood, there was no known conflict as she felt all the assets of the estate belonged to herself and her children. The construction of the will by this court presents a very real problem by establishing the rights of the unborn remaindermen. The court understands how, in the course of events, such situation might arise and that the claims may well be valid. However, it is quite clear that they may not be asserted by answer or otherwise in this action.

The claim sought to be asserted by way of answer here would be in the nature of a cross claim by Ida Wood personally against herself as executor of the estate of her husband and the estate itself. It has nothing to do with the rights of the creditors herein. Further, it is a matter for initial consideration in the probate court and if litigation be necessary in the courts of South Caro-

lina. It is not claimed that Ida Wood's claims have priority over the claims of the creditors secured by the land involved. Therefore, this court cannot stay the relief heretofore granted and unquestionably due the secured creditors to allow time for the resolution of claims, which don't affect the rights of those creditors, and which were first made after judgment was entered.

The proposed amended answer seeks as additional relief, the commutation of the estates of the Woods. If this could be accomplished, only an insignificant portion of the proceeds of the ordered sale would have to await the time when it can be determined whether the estate of the unborn remaindermen will ever vest and the Wood defendants, being entitled to the rest, would be in an improved position to bid at the foreclosure sale. In its order of November 2, the court indicated that, subsequent to the ordered sale, it would determine the proportionate shares of the individual defendants in the proceeds of that sale. At the time this motion was heard, counsel stated their positions regarding the distribution of the surplus funds. As it appears that ruling on that matter before the sale will accommodate the Wood defendants the court will so rule.

It appears settled in South Carolina that:

> [I]n the absence of a statute otherwise providing, the owner of the life estate is not entitled to have the present value of such estate paid him, but only the income from the proceeds during the continuance of such estate. In other words, he is entitled to the use only of the property, whether lands or money, and not to any portion of the corpus. Where the property is sold for partition, the proceeds should therefore be invested for the benefit of the owner of the life estate and the income paid him until the falling in of such estate, upon which event the proceeds should be disbursed among those entitled thereto. 158 S.E. 134.

South Carolina Sav. Bank v. Stansell, 160 S.C. 81, 90 158 S.E. 131, 134 (1931).

In the above quoted case the court went on to say that such commutation could be made with the consent of all remaindermen. In that case the court upheld the evaluation of the life estate even though some of the remaindermen were minors. The suit, however, was brought by the purchaser at the master's sale. All of the infant remaindermen were alive and represented by a guardian who had consented to the order evaluating the life estate. The property was in a run down condition and deteriorating rapidly. In addition the life estate was valued very conservatively. On those facts the South Carolina court approved it in the following language:

> Accordingly, while adhering to the announced rule as to the investment of the proceeds and the payment to the holder of the life estate of the income therefrom, etc., this court will not interfere, under the facts of this case, with the disposition made of the life estate.

158 S.E. at 134.

In the present case, the remaindermen are unborn, cannot consent and their guardian has not consented for them if, in fact, he could. As the property must be sold, there is no danger of further wasting of the corpus in which the unborn children have the executory interest. Therefore, the court cannot order the life estate of Ida Wood commuted (see also United States v. 15,883.55 Acres of Land, 45 F.Supp. 783 (W.D.S.C. 1942)).

Counsel has cited no precedent which would justify this court's evaluation and commuting the remainders, vested subject to divestment, of the defendants Charles Kenneth Wood and Jewell Wood Hall. He suggests that the value of the vested remainders subject to divestment be computed and paid their owners according to the tables used by the Internal Revenue Service; and that the value of the executory interest be held until the time of possession specified in the will and then paid according to the provision of the will. This is clearly im-

proper. It would deplete the estate of the holders of the executory interest in the event that it should vest. Should it not vest, the holders of the executory interest would take nothing, according to counsel's argument. The better conclusion is probably that they would take the commuted value of the interest regardless of future events. However, it is the conclusion of the court that such distribution would be improper and that the fund produced by the sale of the land must be maintained intact to afford protection to the unborn persons who have an interest therein.

At the request of the Wood defendants it is ordered that the property described in the Complaint be sold in the following order:

Tract #12 as described in the Complaint sold 1st, Tract #11—2nd, Tract #10—3rd, Tract #7—4th, Tract #3 —5th, Tract #2—6th, Tract #1—7th, Tract #4—8th, Tract #6—9th, Tract #5—10th, Tract #8—11th, and Tract #9—12th.

For the foregoing reasons, it is ordered the property be sold, after the giving of proper public notice, on the first sale day of April, 1971, or as soon thereafter as possible, according to the terms of the order previously issued by this court on November 2, 1970. It is further ordered that the tracts be sold in the above stated order. In light of the above discussion, the following disposition of the balance of the proceeds after the payments ordered in paragraph 12(a) and (b) of the order of November 2, is proper. Three Thousand ($3,000.00) Dollars, an amount which the court finds reasonable, shall be paid as attorney's fees to the attorney for the plaintiff herein. The balance will be paid to a trustee agreeable to the Wood defendants, the guardian ad litem for the unborn remaindermen, and the United States of America, or in default of their agreement, to a trustee named by the court. That trustee is to hold and invest the fund until such time as the interests of the remaindermen become possessory, then to pay its corpus to them. He is to

apply the income of the fund to the satisfaction of the amount owed by the Wood defendants to the United States until such time as that debt is fully paid. At that time, he is to commence paying the income to Ida Walker Wood and to continue such payment as long as her interest in the fund shall last.

And it is so ordered.