In the Matter of the Accounting of LINCOLN ROCHESTER TRUST COMPANY, as Trustee under the Will of LEVA W. WALBRIDGE, Deceased.

Surrogate's Court, Monroe County, July 20, 1948.

*John G. Shaw* and *Donald R. Harter* for trustee, petitioner.

*Francis M. Bradley* for Margaret W. Maura, respondent.

*Albert E. Goldman,* special guardian for Alice M. Lane and others, infants, respondents.

WITMER, S. Testatrix died in 1928, and her will, made in 1927, was admitted to probate by this court on October 22, 1928. The will created a trust for Benjamin Woods for life. He died on October 2, 1947. The trustee has petitioned for a judicial settlement of its account, and seeks a construction of the will in connection therewith.

The will directs the trustee (par. " *Eighth* " [d]) " To pay at the death of the said Benjamin Woods the principal of said trust fund *and any undistributed income* in equal shares " (italics added) to nine named nephews and nieces. Paragraph " *Ninth* " provides : " In case any of the said nephews and nieces shall have died prior to the death of my said brother, Benjamin Woods, I direct the said trustee to pay the share of such deceased nephew or niece to his or her descendants, in equal shares, and, in default of such descendants, to the surving [*sic*] of such nephews and nieces and the descendants per stipes [*sic*], of any deceased newphew [*sic*] or niece in equal shares."

Two questions are presented. First, the apportionment of income between the estate of the life tenant and the remaindermen ; and second, a determination of whether the word " descendants " as first used in paragraph " *Ninth* " includes all issue per capita or is limited by a per stirpes construction.

On the question of apportionment, it appears that the last semiannual payment of income made by the trustee to the life tenant was on June 27, 1947. Thereafter and prior to the death of the life tenant, Benjamin Woods, the trustee collected a small amount of income which remained in its hands at the death of Benjamin Woods, and since such time the trustee has collected other income, part of which accrued in the lifetime of Benjamin Woods, and holds it subject to this construction proceeding. In addition, in the lifetime of Benjamin Woods a mortgage investment in the trust became delinquent. The trustee foreclosed the mortgage and took title to the property. In the lifetime of Benjamin Woods the trustee sold the property and accepted a purchase-money mortgage for part of the sale price. In accordance with the rules laid down in *Matter of Chapal* (269 N. Y. 464) and *Matter of Otis* (276 N. Y. 101) the trustee then apportioned the proceeds and allocated the sum of $1057.27 to the income account; and no objection is made to this allocation. After the death of the life tenant the trustee sold the purchase-money mortgage accepted in the salvage operation, and thus for the first time became in a position to pay over such income.

Respondents urge that the language of the will " any undistributed income " means just that, and accordingly that all of the income in the hands of the trustee is now payable to the remaindermen without apportionment.

The portion of the proceeds of the mortgage salvage operation which were allocated to income at the time of the resale of the property after the foreclosure is deemed to have been paid.

" We treat such income as neither accrued nor accruing — it has been paid. All that remains is the administrative act by which the trustee makes distribution thereof." (*Matter of McManus,* 282 N. Y. 420, 426.) It has been held that such income is deemed to have been paid at the time of the foreclosure action (*Matter of Culver,* 57 N. Y. S. 2d 598), but here it is immaterial whether that date or the date that the trustee actually received title is accepted as the time of payment. Such income has the same status as the other cash income received by the trustee prior to the death of the life tenant, but remaining in the trustee's hands. The title to such income was vested in the life tenant. (*Matter of Keogh,* 112 App. Div. 414, 418, affd. 186 N. Y. 544.) If the words in the will " undistributed income " were interpreted in their literal sense to mean all income in the hands of the trustee not yet paid over to the life tenant, the rights to the income would be dependent upon the punctuality of the trustee, and moreover, the provision would amount to an unlawful accumulation, and hence would be void. (Personal Property Law, § 16; Real Property Law, § 61; *Matter of Watson,* 144 Misc. 213, affd. as to this point 237 App. Div. 625 and 262 N. Y. 284, 300.) The words should be interpreted, if possible, so as to render the provisions of the will valid and effective. (*Matter of Hoyt,* 116 App. Div. 217, affd. 189 N. Y. 511; *Hawthorne* v. *Smith,* 273 N. Y. 291; *Matter of Gould,* 272 App. Div. 827, affd. 297 N. Y. 979.) It is held, therefore, that such income belongs to and is payable to the estate of Benjamin Woods, the deceased life tenant.

On the question of apportionment it remains only to determine whether the income in the trustee's hands, received by it after the death of Benjamin Woods but partly accrued prior thereto, must be apportioned. Under the statute (Surrogate's Ct. Act, § 204) it must be apportioned unless the will contains a direction against apportionment. Such a provision is not a direction for an unlawful accumulation. (*Matter of Juilliard,* 238 N. Y. 499.) In this cited case the court stated (p. 510) " that a stipulation against the statutory rule of apportionment should not be implied from words of doubtful construction." In my opinion the use of the words " and any undistributed income " expresses the testatrix' desire that there be no apportionment under section 204 of the Surrogate's Court Act. To hold otherwise we must virtually disregard those words, and in effect excise them from the will. Accordingly, all of such income which became due and was actually received by the trustee after the death of the life tenant is to be distributed among the remaindermen. *A fortiori,*

all income accruing and paid to the trustee after the death of the life tenant is payable to the remaindermen.

This brings us to the second question, to wit, the interpretation of the word " descendants " as first used in paragraph " Ninth " of the will. It is acknowledged that in the absence of some indication of a contrary intent the word " descendants " means per capita of every degree. (*Van Beuren* v. *Dash,* 30 N. Y. 393; *Matter of Voight,* 178 App. Div. 751; *Matter of Herrick,* 152 Misc. 9.) The word " descendants " is deemed synonymous with the word " issue ". (*Van Beuren* v. *Dash,* supra, p. 415; 3 Restatement, Property § 292.) By statute (Decedent Estate Law, § 47-a), in the absence of a contrary intent, the common law meaning of the word " issue " was changed to a per stirpes construction; but no legislation has been enacted with reference to the word " descendants ", and we must rely upon the common-law rules of construction herein.

What the cases have said with reference to the construction of the word " issue " applies with equal force with reference to the word " descendants ". In *New York Life Ins. & Trust Co.* v. *Winthrop* (237 N. Y. 93, 105) CARDOZO, J., speaking for the court, said: " A stubborn rule of law bound the courts for many years to the holding that a gift to ' issue ' was to be treated as a gift *per capita.* The rule was often deplored (*Petry* v. *Petry,* 186 App. Div. 738; 227 N. Y. 621; *Matter of Union Trust Co.,* 170 App. Div. 176; 219 N. Y. 537). It yielded to ' a very faint glimpse of a different intention ' (*Matter of Farmers' Loan & Trust Co.,* 213 N. Y. 168, 174; *Matter of Union Trust Co., supra*). It was followed, when there was no escape, in submission to authority. A recent amendment of the Decedent Estate Law (L. 1921, ch. 379; Decedent Estate Law, [Cons. Laws, ch. 13], § 47a) has wiped it out for the future." (To the same effect see *Central Hanover Bank & Trust Co.* v. *Pell,* 268 N. Y. 354, 358; *Matter of Burke,* 178 Misc. 684.)

Here the testatrix' language clearly shows an intent for distribution per stirpes, for she provides that " in default of such descendants, to the surving [*sic*] of such nephews and nieces and the descendants per stipes [*sic*], of any deceased newphew [*sic*] or niece in equal shares." The statements by Judge CARDOZO in *Matter of Farmers' Loan & Trust Co.* (213 N. Y. 168, 174–175, *supra*) are in point, to wit: " The word ' equally,' standing by itself, imports a division *per capita,* but it may get another meaning from the context. * * * Equality of division is to be preserved, but only within the limits consistent with

a division *per stirpes.* * * * It is incredible that he contemplated a stirpital division among issue of children who died before him, but after the making of the will, and a *per capita* division among the issue of those children who died before him and before the making of the will. A rule which yields so readily as the one that presumes a *per capita* division, must give way where adherence to it involves a discrimination so unreasonable." The word " descendants ", therefore, will be limited by construing it per stirpes and not per capita, and distribution shall be made to the remaindermen on that basis.

Submit decree accordingly.