## 18034

Jane Sirrine COTHRAN and Helyn C. Asbury, as Executrix of the Estate of William G. Sirrine, Plaintiff-Respondents, v. The SOUTH CAROLINA NATIONAL BANK OF CHARLESTON, (Greenville, S. C.) as Executor and Trustee of the Estate of Joseph Emory Sirrine, Daniel R. McLeod, as Attorney General of the State of South Carolina, and John Doe, individually and as representative of all the unborn children and grandchildren of Jane Sirrine Cothran, Defendant-Appellants.

(180 S. E. (2d) 177)

*Messrs. Rainey, Fant & Horton,* of Greenville, *for Appellant, The South Carolina National Bank of Charleston, as Executor and Trustee of the Estate of Joseph Emory Sirrine,*

*Messrs. Benjamin B. Dunlap* and *Victor S. Evans, Assistant Attorneys General,* of Columbia, *for Appellant, Daniel R. McLeod, Attorney General.*

*Messrs. Hinson & Hamer,* of Greenville, *for Respondent, Jane Sirrine Cothran,*

*Messrs. Kendrick & Stephenson* and *Wyche, Burgess & Wyche,* of Greenville, *for Respondent, Helyn C. Asbury, as Exectrix of the Estate of William G. Sirrine, deceased,*

84

*Messrs. Rainey, Fant & Horton,* of Greenville, *for Appellant, The South Carolina National Bank of Charleston, as Executor and Trustee of the Estate of Joseph Emory Sirrine, in Reply,*

February 27, 1963.

LEWIS, Justice.

This is an appeal by the defendant, The South Carolina National Bank of Charleston, from an order of the lower court striking certain portions of the defendant's answer and refusing the said defendant's motion for an order of reference.

The plaintiffs instituted this action under the Uniform Declaratory Judgments Act of South Carolina seeking a determination of the rights of the life beneficiaries under the will of the late J. E. Sirrine of Greenville, South Carolina, in and to certain stock dividends and the profits from the sales of stock received by the defendant, The South Carolina National Bank of Charleston, as trustee under said will.

The complaint alleges, and the answer admits, that J. E. Sirrine died on August 7, 1947, leaving a will dated June 5, 1941 and two codicils thereto dated May 1, 1946 and May 29, 1947. These instruments were made a part of the complaint. Under the terms thereof, pertinent to the issues here, a trust was created and the trustee directed to pay "all the net income" of the trust estate as follows: one-half to the plaintiff, Jane Cothran, the testator's niece, and one-half to his brother, William G. Sirrine, now deceased, for life. Upon the death of one of the beneficiaries, the survivor was to receive "all the net income" of the trust estate for life. Upon the death of Jane Cothran, with children, the trust was to continue, her children receiving "the net income" until the youngest reached twenty-one years of age, at which time the principal was to be distributed among those then living. If Jane Cothran should die without descendants, the trustee would administer the estate as a memorial for the benefit of deserving students of Greenville High School.

The complaint further alleges that the defendant, as trustee, is required under the terms of the will to pay to the life beneficiaries "all the net income" of the trust estate, which it has failed and refused to do, by refusing to distribute to the life beneficiaries (1) dividends received by it, in stock, on shares of stock owned by the said J. E. Sirrine and on shares of stock acquired by the trustee after his death, and (2) profits realized from the sale by the trustee of stock owned by the deceased at the time of his death and stock acquired by the trustee after the decedent's death.

The prayer of the complaint asked the court to declare the stock dividends and such profits from the sales of stock as income from the trust estate and order its distribution to the life beneficiaries.

William G. Sirrine, one of the life beneficiaries, died on December 11, 1959, leaving a will in which Helyn C. Asbury was named executrix. She, in that capacity, along with Jane Cothran, the surviving life beneficiary, are the plaintiffs in this action.

The answer of the defendant bank sought to interpose three defenses. These defenses include, in addition to a general denial, estoppel and laches under various circumstances, which will be hereafter referred to in more detail.

Upon the filing of the answer, the plaintiff moved to strike therefrom the defenses relating generally to estoppel and laches upon the grounds that they were irrelevant, immaterial and not responsive to the allegations of the complaint. The defendant moved at the same time for an order of reference upon the grounds that the action is one in equity and will involve the taking of considerable testimony. Upon hearing the foregoing motions, the lower court granted that of the plaintiffs to strike certain allegations from the answer but denied the motion of the defendant for an order of reference. From this order the defendant has appealed.

It is conceded that the primary issue raised by the complaint and answers was whether, under the terms of the will of J. E. Sirrine and the codicils thereto, dividends paid in stock and certain portions of the proceeds resulting from sales of stock by the trustee constituted income belonging to the life beneficiaries of the trust or corpus to be held by the trustee for the benefit of the remaindermen. Admittedly, the determination of this issue will be governed by the rule of law to be applied in determining whether such profits from the sales of stock and the stock dividends constituted income or corpus of the trust estate under the will.

In passing upon the plaintiffs' motions to strike and the defendant's motion for an order of reference, the lower court concluded that the issues arising under such motions could only be determined in the light of the legal principles which must be applied in deciding the foregoing primary issue in the case. Accordingly, the lower court, preliminarily to passing upon the motions, reviewed the South Carolina decisions and concluded that the apportionment, or Pennsylvania rule had been adopted by our courts in interpreting the term "net income" in such cases and that the term was, therefore, not ambiguous. In the light of the foregoing principles, the lower court concluded that the allegations of the answer sought to be stricken were irrelevant and that the order of reference should be refused.

At the outset, the defendant objects to the scope of the order of the lower court, contending that in determining the principles of law which would govern the determination of the primary issue in the case the court erroneously decided issues involving the merits. There is no merit in this contention. The motion of the plaintiffs to strike was based upon the ground that the apportionment rule had been adopted by the courts in this State in interpreting "net income", therefore, the term was not ambiguous under our decisions, and such allegations of the answer were irrelevant. The motion of the defendant for an order of reference was based in part upon an affidavit of its trust officer, in which the apportionment rule is discussed in connection with the claimed necessity for an order of reference. Oral argument was allowed in this case upon the petition signed by counsel for all parties. This petition contained the following material statement:

"2. If it was proper for the court to determine what rule of law governs in South Carolina with reference to the question of income as between life tenant and remaindermen and if the court below determined the proper rule of law so governing, the case would be substantially disposed of and it would only be necessary to have an accounting

in accordance with such principles, with reference to which little controversy, if any, is anticipated."

Under the foregoing circumstances, we think that it was proper for the lower court to determine the rule of law which governs in South Carolina with reference to the question of the meaning of the term "income" as used in the will in question. The relevancy of the allegations of the answer could only be determined in the light of the legal principles governing the determination of that primary issue in the case, and the propriety of an order of reference depended upon the determination of the scope of the inquiry to be made at the trial under the applicable legal principles.

We, therefore, agree with the lower court that the determination of the issues which arise under the motions is largely dependent upon the rule of law to be followed in determining "income" under the terms of the will. In addition, it clearly appears from the record before us that, by passing upon the question, confusion will be avoided in the trial of the case in the circuit court and that such would be in the interest of all parties in the further disposition of the cause.

The complaint seeks a recovery from the defendant, as trustee, of (1) all dividends in stock received by the trustee, and (2) the portion of the proceeds from the sale of corporate stock by the trustee which represents either (a) the difference between the value of the stock at the time acquired by the trustee and the sales price thereof, or (b) the difference in the value of the stock at the time acquired by the trustee and the sales price, to the extent that such difference represents earnings of the corporations withheld by the respective corporations during the terms of the trust and not declared and paid to the stockholders.

The will in question is before us as a part of the complaint, and admitted by the answer. The bequest in the will of J. E. Sirrine to the life beneficiaries was of "all the net income of my estate." The will contains no definition of what shall constitute "net income" and

no discretionary power is vested in the trustee to determine what constituted income or corpus of the estate.

What then is the rule to be followed in determining "net income" under the will, as it relates to (1) dividends in stock and (2) profits from the sale of stock received by the trustee from the trust's ownership of corporate stock?

Questions relating to the conflicting rights of life beneficiaries and remaindermen to the benefits derived from the ownership of corporate stock have been the subject of such litigation and in the solution of the problem the courts have adopted several different rules for determining these rights. All courts, of course, recognize that where the testator's intention that the life tenant shall receive the increment from the stock appears from the trust instrument such intent is controlling. Where the testator has not manifested any specific intention, but has, as in this case, simply provided that all of the income from his estate shall be paid to the life beneficiaries, the courts have divided into at least three groups in attempting to determine in certain instances whether the particular benefit received by the trustee from the ownership of corporate stock shall be allotted to income or corpus. These are generally referred to as the (1) Massachusetts rule, (2) apportionment or Pennsylvania rule, and (3) Kentucky rule. For a discussion of these rules, their application, and the principles underlying each, see: Bogert, Trusts and Trustees, Second Edition, Section 842 *et seq.;* 3 Scott, Trusts, Second Edition, Section 236 *et seq.;* 33 Am. Jur. 845, Sections 336 & 337; 18 C. J. S. Corporations § 471, p. 1122; Annotations: 76 A. L. R. (2d) 162; 130 A. L. R. 492; 44 A. L. R. (2d) 1277.

Under the so-called Pennsylvania, or apportionment rule, it is the source of the stock benefit, and not its form, which determines to what extent it shall be treated as income or corpus of the estate. This rule treats all declared dividends, whether in cash or stock, as income to the life beneficiaries

to the extent that the earnings from which the dividend is declared accumulated since the acquisition of the stock by the trustee. This rule also treats either profits from the sale of stock by the trustee during the life tenancy, or profits from the liquidation of the stock by the corporation during such period, as apportionable between the life tenant and remaindermen, if the profit was due to an accumulation of earnings by the corporation. The foregoing rule is based on maintaining the "intact value" of the stock as a part of the corpus of the estate for the remaindermen and giving the accretion to the life tenant. See: *In re Nirdlinger's Estate,* 290 Pa. 457, 139 A. 200, 56 A. L. R. 1303.

We agree with the lower court that our decisions have adopted the so-called Pennsylvania, or apportionment rule. *Cobb v. Fant,* 36 S. C. 1, 14 S. E. 959; *Wallace v. Wallace,* 90 S. C. 61, 72 S. E. 553; *Gist v. Craig,* 142 S. C. 407, 141 S. E. 26. In the foregoing decisions, profits from the sale of corporate stock by the trustee were involved, as in the instant case. In the *Wallace case* the profits from the sale were due to accumulations in earnings on the stock, represented in part by extra shares declared as stock dividends and in part by increase in the value of the shares from the retention of earnings by the corporation. While the use of the words "interest, income or profits" in the bequest in that case was of some influence upon the court in reaching its decision, the conclusions reached were also based upon general principles of law. In the *Wallace case,* the question before the court was stated as follows:

"The first question that will be considered is whether there was error, on the part of his honor, the circuit judge, in his ruling that the accretion of the bank stock, as shown by the difference in value of the stock at the time of its acquisition by the trust estate, and the value at the time of the death of the life tenant, due to accumulations in the interval of earnings, represented in part by extra shares declared as stock dividends and in part by increase in book value of the shares from the retention of earnings undistri-

buted passed to the devisees of the life tenant, and not to the remaindermen."

The following ruling of the circuit judge in the *Wallace case* upon the foregoing issue was approved on appeal:

"While upon the subject of the distributions of dividends or earnings upon stock between life tenant and remaindermen the courts are much divided, I am of the opinion that the strongest consideration of reason and justice support the rule which apportions such dividends or earnings between life tenant and remaindermen according to the time when such earnings were made, and not according to the chance action of corporate officers in withholding or declaring dividends; and I think that upon the sale of the stock, as here, in which the funds of the life estate have been invested, the increment in value due to the undivided profits or surplus earned and to the credit of the stock, though not declared by the corporation as dividends should be awarded to the life tenant.  *  *  *  The evidence shows with reasonable certainty the amount of the selling price of the stock in question, which represented the value of the undistributed earnings upon the conversion of the stock into money by sale, and there appears to be no difficulty in fairly apportioning proceeds of sale between the representatives of the life tenant and the remaindermen according to the equitable rule of apportionment just stated."

In the *Gist case, supra,* the testator devised all of his property to his wife for life with remainder over. There was no trust and no provision for the payment of income to the life tenant, simply a devise to the wife of all of testator's property for life. At the time of his death, the testator owned 15 shares of the capital stock of the Winnsboro Bank, which at the time of his death was worth $102.00 per share. After the testator's death, two of the shares were retired by the bank at the value of $175.00 per share and the proceeds of $350.00 were paid to the life tenant. The remaining 13 shares enhanced in value to $240.00 per share, a total enhancement of $1,794.00, at the time of

the death of the life tenant. There were two questions presented in the *Gist case*: (1) Who was entitled to the $146.00 profit representing the increase in value of the two shares redeemed by the Bank during the life tenancy; and (2) who was entitled to the $1,794.00, representing the accretion in the value of the remaining 13 shares which had not been sold or disposed of. The bank was still a going concern. While there is a great deal of dictum in the opinion in the *Gist case,* the court followed the apportionment rule in reaching its decision. With reference to the profit of $146.00 realized from the redemption of the stock, the Court said: "It is conceded that at the time of the death of Dr. Douglass in 1897, the bank stock was worth $102.00 per share, par value $100.00; when Mrs. Rice (the life tenant) in 1905 received from the bank in cash $350.00 for the retirement of the two shares, she received $204.00, which may be considered the corpus of that fund, and $146-.00 a distributed earning upon the stock. Under the authorities hereinafter considered in reference to the $1,794.00 item, the $146.00 *should be considered as earnings distributed by the bank to the life tenant, and became her absolute property."* (Emphasis added.)

As to the second question involved in the *Gist case,* with which we are not here concerned, it was held that the life tenant was not entitled to nor did she have the power to dispose of the accretion in value of the remaining 13 shares of stock because (1) there had been no declaration of a stock dividend from the additional earnings of surplus, (2) there had been no sale of the stock by the life tenant or any trustee, and (3) there had been no liquidation and distribution of the earnings of the corporation.

Therefore, the *Gist case* clearly held that the testator not having manifested any specific intention thereabout, upon the redemption of the two shares of bank stock, the difference between the value of the stock at the death of the testator and the redemption price, when this difference resulted from earnings accumulated by the bank during the term of the life

tenancy, belonged as a matter of substantive law to the life tenant and not to the remaindermen. The *Gist case* was so construed in *Evans v. Adams,* 180 S. C. 214, 185 S. E. 57.

While the Pennsylvania, or apportionment rule has been criticized and has been changed in some states by the adoption of the Uniform Principal and Income Act, South Carolina has no statutory enactment upon the subject and has for many years recognized and applied the rule in determining the conflicting rights of life beneficaries and remaindermen to benefits received from the ownership of corporate stock. We would not be justified in overthrowing a rule so long established.

In the light of the foregoing principles, we proceed to a determination of the relevancy of the portions of the answer which it is sought to have stricken. The allegations of the answer involved are paragraphs VII and IX of the first defense and all of the second and third defenses.

Paragraph VII alleges that William C. Sirrine was an attorney with wide experience in trust and testamentary matters and prepared the will and codicils executed by his brother, J. E. Sirrine and that, with his knowledge of the law and of his brother's wishes and intent, William G. Sirrine acquiesced without protest in the manner in which the defendant treated stock dividends and profits on the sales of stock. Such acts and conduct on the part of the said William G. Sirrine, one of the life beneficiaries, it is alleged, now deprived his executrix, the plaintiff Helyn C. Asbury, of any right to assert the claims set forth in the complaint to such dividends and profits.

Paragraph IX alleges that the testator was at the time of, and for many years prior to his death a director of the defendant bank and a member of its trust committee; that he was familiar with the practice of the bank in handling estates and trusts, particularly with reference to stock dividends and profits on sales; and that if the testator desired for stock dividends and profits from sales of stock

to be handled in a different manner from the practice followed, he would have so stated in his will.

The second defense alleges that the plaintiffs, by having acquiesced for approximately fourteen years in the manner in which the defendant bank handled stock dividends and profits from the sale of stock and by delaying the bringing of this suit until after the death of William G. Sirrine, one of the life beneficiaries, have deprived the bank of the means of showing the intent of the testator and has caused the bank to take action with reference to the sale of stock "which it might otherwise have handled differently."

The third defense pleads that the plaintiff, Jane S. Cothran, is now estopped from claiming that the profits on the sale of stock in Chiquola Manufacturing Company should be paid over to her as net income from the trust, in that she exerted great pressure, through her attorney, upon the defendant to sell said stock, repeatedly pointing out to the defendant that the profit which it would realize from such sale, when invested, would afford her substantial income and after her death be available for educational purposes.

Basic to a decision of the relevancy of the foregoing allegations is the determination made hereinabove that the term "net income" as used in the will of J. E. Sirrine was not ambiguous under settled principles of law in this State.

It is conceded that the will was prepared by an experienced attorney in trust matters. As stated in the case of *Peoples National Bank of Greenville v. Harrison,* 198 S. C. 457, 18 S. E. (2d) 1:

"The will in controversy was not drawn by a layman. It was drawn by a lawyer of long and successful practice and it is natural to assume that when he used the words contained in the residuary clause, he was fully aware of the legal construction which would be given such words under the decisions of the Supreme Court hereinabove referred to."

The testator used words of settled legal meaning, and the custom of the defendant bank in handling similar situations

or testimony that the testator might have meant something else cannot change the intent of the testator clearly expressed. The defendant bank occupied the position of trustee under the will. Its duty was to administer the trust in accordance with its terms and not according to some custom to the contrary.

The second defense pleads laches on the part of the plaintiffs in failing to sooner assert their rights.

"In order to constitute laches, there must be shown, not merely neglect for a time to enforce a legal or equitable right, where such neglect is for a period short of that which is a bar under the statute of limitations, but it must further be made to appear that such delay was accompanied either by a failure to perform some legal duty, whereby prejudice has resulted to the person pleading such neglect, or that such delay was accompanied by some act on the part of the person so negligent, which operated to mislead the person pleading such neglect, to his prejudice to such an extent that it would be unjust and inequitable thereafter to permit such negligent party to enforce such right." *Edwards v. Johnson,* 90 S. C. 90, 72 S. E. 638.

In the case of *Privette v. Garrison,* 235 S. C. 119, 110 S. E. (2d) 17, it was stated that "[t]he determination of the question of laches proceeds in the light of the circumstances of each case, taking into consideration among other things whether the delay has worked injury, prejudice or disadvantage to one of the parties."

In the instant case, the defendant bank has the assets involved in the litigation and is still administering the trust. The allegations of the answer reveal no action on the part of the trustee which cannot be remedied by paying over the net income to those persons legally entitled thereto. Assuming that there has been delay, there is a total absence of any allegation upon which the conclusion could be reasonably based that the trustee or the remaindermen have been misled to their prejudice or that prejudice has resulted to either in any way.

The third defense pleads estoppel on the part of the plaintiff, Jane S. Cothran, a life beneficiary.

The elements of an estoppel were set forth as follows in the case of *Adams v. Adams,* 220 S. C. 131, 66 S. E. (2d) 809, 812:

"The essential elements of an equitable estoppel as related to the party claiming the estoppel are (1) lack of knowledge and the means of knowledge of the truth as to the facts in question, (2) reliance upon the conduct of the party estopped, (3) action based thereon of such a character as to change his position prejudicially. 19 Am. Jur. 643, Sec. 43. In Sec. 87, page 744 of the same volume, we find: 'If, at the time when he acted, the party claiming the estoppel had knowledge of the truth, or had the means by which with reasonable diligence he could acquire the knowledge so that it would be negligence on his part to remain ignorant by not using those means, he cannot claim to have been misled by relying upon the representation or concealment.' "

The essence of the plea of estoppel here is that the life beneficiary insisted that the Chiquola stock be sold at a profit and that, if this were done, she would realize a substantial income from the investment of such profits and after her death it would be available for educational purposes. Certainly a request by a life beneficiary that the trustee sell stock at a profit could not act as an estoppel; neither do the alleged representations of the life beneficiary accompanying such request. It is not alleged that, but for the representations of the life beneficiary, the defendant bank would have treated the profits as income. On the contrary, the defendant denies that any part of such profits was ever income under the will.

The answer contains no allegations that the plaintiff, Jane S. Cothran, knowingly misled the defendant bank or that such defendant or the remaindermen have in any way suffered any legal prejudice from the sale of the stock or its subsequent handling by the defendant. The defendant bank had the same means of ascertaining the facts as any benefi-

ciary of the trust. It cannot claim to have been misled by any representations of the plaintiff.

The allegations of the third defense, if proved, would not constitute a defense to the cause of action set forth in the complaint.

The lower court properly granted the motion of the plaintiff to strike the foregoing allegations from the answer.

Lastly, it is contended that the lower court erred in refusing to grant the defendant's motion for an order of reference. The granting of such motion was within the discretion of the trial judge. Section 10-1402, 1962 Code of Laws of South Carolina; *Momeier v. John McAlister, Inc.,* 190 S. C. 529, 3 S. E. (2d) 606.

As heretofore pointed out, counsel for all parties agreed, in their petition to this Court to be allowed oral argument, that, if the lower court was correct in its rulings upon other phases of the case, "the case would be substantially disposed of and it would only be necessary to have an accounting in accordance with such principles, with reference to which little controversy, if any, is anticipated." Under these circumstances, there was no abuse of discretion in refusing the motion for an order of reference.

Affirmed.

TAYLOR, C. J., and MOSS, BUSSEY and BRAILSFORD, JJ., concur.