18849

The SOUTH CAROLINA NATIONAL BANK OF CHARLESTON (GREENVILLE, S. C.), as successor Trustee under the Will of John W. Arrington and as Executor of the Will of Nelson B. Arrington, Respondent, v. Cornelia G. C. ARRINGTON *et al.*, Appellant.

(165 S. E. (2d) 77)

2

*Messrs. Love, Thornton, Arnold & Thomason,* of Green-
ville, *for Appellant,*

*Messrs. Rainey, Fant & Horton,* of Greenville, and *Robinson, McFadden & Moore,* of Columbia, *for Respondent,*

December 11, 1968.

Moss, Chief Justice.

John W. Arrington, a resident of Greenville County, South Carolina, died on November 14, 1938, leaving in force and effect his will dated September 26, 1935, and two codicils thereto dated July 16, 1937, and May 11, 1938, respectively. The will, with the codicils, was duly admitted to probate in the office of the Probate Court for Greenville County, South Carolina.

The testator left surviving him his widow, Mary Carter Arrington, and three sons, John W. Arrington, Jr., Richard W. Arrington and Nelson B. Arrington, and one daughter, Octavia A. Cameron. Under the terms of his will his three sons were named as executors and also as trustees of a trust created therein. The three sons duly qualified as executors of said will and were discharged on December 19, 1941.

After a bequest of certain personal property to his wife, the remainder and residue of his property was left in trust with the trustees as aforesaid, and they were directed, by Item II of said will, to apply the net income or profits to the payment of $100.00 per month to his mother, $75.00 per month to his aunt, $75.00 per month to each of the sisters named in his will, and the sum of $50.00 per month to a sister-in-law. It is then provided in Item II of said Will, as follows:

"(3) To pay the balance of the net income from the date of my death to my wife, Mary Carter Arrington, during her life. I make no provision for the payment of any fixed income to my wife for the reason that I have made provision for her by insurance and by a trust fund which I have created.

"(4) After the death of my wife, to divide and pay over the net income to my said three sons, share and share alike; the issue of any deceased son to take the parent's share, per stirpes; and should there be no issue at the time of distribu-

tion such share shall go to the heirs at law of such deceased son determined as though he had died at the time of distribution.

"For the purposes of distributions hereinabove provided for, all income which may accrue to, or be received by, my executors during the period of administration, shall be treated as income, and not principal, nor corpus, whether in their hands or in the hands of my said trustees.

"Should the income at any time be insufficient to make all the payments hereinabove provided, the payments to my mother, as provided in subdivision (1) of this item, shall be made in preference and priority to any other payment herein provided for. Should the net income, after making the payments provided for in sub-division (1) be insufficient to cover in full the payments provided for in subdivision (2), such payments provided for in subdivision (2) shall be abated ratably. Should the income be insufficient at any time to make the payments to my mother, as provided in subdivision (1), my said trustees, in their discretion, may make such payments out of the corpus. In the event of the death of any beneficiary named in subdivisions (1) and (2), the monthly payments hereinabove provided to be made to her shall cease and be disposed of as the balance of the net income."

The testator, by Item III of his will, provided:

"Upon the death of the last survivor of my said sons, or the death of the last of those who shall not have withdrawn as hereinafter provided, or the withdrawal of the last of them as hereinafter provided, or upon the death of the last survivor of the beneficiaries hereinabove named, whichever event is latest, the trust, herein provided for, shall cease and determine and the corpus of the trust estate, with any accumulation of undistributed income, shall be divided and distributed in the proportion of one-third to the issue of each of my said sons, per stirpes. Should there be no issue of either of my said sons surviving at the time of distribution,

then his share shall pass to his heirs at law, determined as though such son had died at the time of distribution; provided, however, that at any time after the death of the last survivor of the beneficiaries mentioned in subdivisions (1), (2) and (3) of Item II, either of my said sons may withdraw his share; that is to say, one-third of the corpus of the trust estate, with his proportionate part of the undistributed income, and, thereupon, he shall receive his part or share, freed of all trusts, and he shall thereupon cease to be a trustee of the trusts herein provided for. Any distribution herein provided to be made may be made in kind; if made within the lifetime of any of my said trustees, the discretion of the trustees or of the survivor to be conclusive as to valuation and distribution."

The testator, under Item II of his will, devised his real and personal property to his three sons as trustees, giving to them, as such, authority to hold, control and manage the same, and to collect rents, profits, income and proceeds therefrom, and with the right,

"to sell, resell, exchange or re-exchange, convey or reconvey, assign or reassign, any portion of the trust res, or any substituted property, including specifically the power to exchange stock or securities of one corporation for stock, common or preferred, or securities, of the same corporation or any other corporation; to hold, invest and reinvest proceeds of sale, and to collect and receive the. income and principal of such investments; * * *."

The will provided that in all matters pertaining to the administration of the trust and in the distribution of the funds pursuant to Item III thereof, the decision of a majority of the said trustees, or the decision of the survivor if but one survived would be final and conclusive.

Richard W. Arrington died on December 18, 1947; John W. Arrington, Jr. died on November 27, 1956; and Nelson B. Arrington died on September 8, 1964. Each of said sons left a widow and children surviving, Polly P. Arrington,

the appellant herein, being the widow of Nelson B. Arrington. Mary Carter Arrington, the widow of John W. Arrington, died October 15, 1953, and the last of the beneficiaries named in said will and codicil died August 3, 1966, and the trust was at that time terminated.

The South Carolina National Bank was added as a trustee on April 2, 1955. The bank brought this action asking for judgment declaring that capital gains from the sale of stocks, stock dividends, and stock splits received during the period of the trust, be declared corpus and that it be authoriztd to distribute the same to those entitled to such corpus. All necessary parties were properly joined in this action. An answer was filed by a duly appointed *guardian ad litem* on behalf of the minor defendants individually and as class representatives, submitting their interest to the protection of the court. Another granddaughter filed an answer joining in the prayer of the complaint.

Polly P. Arrington (now Polly P. Hudson), the widow of Nelson B. Arrington, filed an answer alleging that capital gains, stock dividends and stock splits should be apportioned between the life income beneficiaries and the remaindermen in accordance with the rule announced by this Court in *Cothran v. South Carolina National Bank of Charleston,* 242 S. C. 80, 130 S. E. (2d) 177. She asserts that a portion of the aforesaid assets should be apportioned to the estate of her husband, Nelson B. Arrington, of which she is a beneficiary according to the terms of his will.

The Master for Greenville County, to whom this case was referred, after holding a number of hearings, filed his report finding that it was the intent of John W. Arrington, expressed in his will, that all capital gains, stock dividends and stock splits received by the trustees during the administration of the trust, were properly allocated to the corpus thereof and no part of such items constituted income within the meaning of the trust. He recommended that the court authorize the bank, as trustee, to distribute that portion of

the trust arising from these capital gains, stock dividends and stock splits to those entitled to the corpus of the trust. Within due time the appellant filed exceptions to the Master's report and these exceptions were heard by The Honorable Wade S. Weatherford, presiding judge, and by his order he sustained the report of the Master. Polly P. Hudson prosecutes this appeal from the order of Judge Weatherford affirming the Master's report.

We think that this appeal can be disposed of by an answer to the question of whether the testator by his will revealed an intent that capital gains, stock dividends and stock splits should be treated as corpus of his trust estate.

The appellant contends that the language of the will expressed no intention on the part of the testator that capital gains, stock dividends and stock splits should be treated as corpus of his trust estate. In the absence of such intention it is contended that the Pennsylvania Rule, established in the Cothran case, should be applied. However, the appellant does agree that if the testator's intention is expressed in the trust, such will govern with respect to the distribution of the benefits between income beneficiaries and remaindermen.

In the construction of a will, the primary purpose of the court is to arrive at testator's intention as expressed in his will considered as a whole. His intention must be ascertained from the language he used where it is clear and unambiguous. In construing a will primary resort is to the words used by the testator. *Black v. Gettys,* 238 S. C. 167, 119 S. E. (2d) 660; *Shelley v. Shelley,* 244 S. C. 598, 137 S. E. (2d) 851.

In the Cothran case this court was faced with the problem of whether stock dividends and profits realized by a trustee from the sale of stock were to be treated as principal or subject to apportionment as between principal and income, in the absence of an expression of the testator's intention as to whether such should be considered principal or income. We held that stock dividends

paid to the trustee and profits realized by it on the sale of stock did not go as principal but was subject to apportionment between the life income beneficiaries and remaindermen. In so holding we followed the Pennsylvania Rule. Stock splits were not involved in the Cothran case and our decision had no application to such. In the case of *In re Pew's Trust Estate,* 398 Pa. 523, 158 A. (2d) 552, the Pennsylvania Court held that there is a substantial difference between a "stock split" and a "stock dividend"; in the former a division of shares of stock, not of earnings or profits of the corporation, takes place without any change in or impingement upon then existing status on corporate books of earned surplus and capital accounts; in the latter, an addition of shares of stock and a division of, at least, some of the earnings or profits of the corporation takes place, such division being reflected on corporate books by irreversible allocation of corporate funds from earned surplus to the capital account. It was held that a stock split represented neither a division of corporate earnings or profits and such stock split was not apportionable between life tenant of trust and remaindermen and was properly allocated to the trust corpus. This rule is here applicable.

The plan of John W. Arrington, as revealed by his will, demonstrates an intent to pass the corpus of his estate to the children of his three sons *per stirpes,* subject to payments out of the corpus under the conditions mentioned in Item II of the will; and also subject to the provision in Item III that at any time after the death of the last survivor of the beneficiaries mentioned in subdivisions (1), (2) and (3) of Item II of said will, either of his said sons might withdraw his share of the trust estate, with his proportionate part of the undistributed income. The testator made no provision for his daughter, Octavia Arrington Cameron "for the reason she is amply provided for." He did make provision for monthly payments for his mother, his aunt and his two sisters and a sister-in-law, with the remainder of the income to his widow. The remainder plus the income from his insurance and from

a trust previously established provided for her needs. Upon the death of the widow, the net income after the monthly payments provided in Item II of the will was to be paid over to and shared equally by his three sons during their lifetime. Finally the will provided that upon the death of the last survivor of the sons, or the death of the last of those who had not withdrawn their share, or upon the death of the last of the survivor of the beneficiaries mentioned in Item II of said will, whichever event was latest, the trust was to terminate and the corpus thereof with any accumulation of undistributed income was to be divided and distributed in the proportion of one-third to the issue of each of the said sons *per stirpes*.

■ There is express language in the will indicating the intent of the testator that capital gains from stock sales should be treated as corpus. In directing the trustees to hold, control and manage the trust assets, they were empowered to sell securities and directed "to hold, invest and reinvest proceeds of sale." The trustees were not authorized to distribute to the income beneficiaries any portion of the proceeds of the sale of a security even if it was sold at a profit. To the contrary, he directs the reinvestment of these proceeds. The trustees were also directed to collect the income "of such investments". We agree with the Master and the circuit judge that the foregoing language shows an intent that capital gains were to be treated as corpus.

■ We come now to the question of whether the will of the testator reveals an intent that stock dividends should become a part of the corpus of his trust estate. We have read and reread the will here involved and find no language therein which evinces an intent that stock dividends received by the trustees should become a part of the corpus of the trust.

The lower court assigned a further reason for treating capital gains, stock dividends and stock splits as corpus and not as income. It held that under Item IV of the will the

trustees had the power and authority to allocate the foregoing items to corpus or income. This item of the will is as follows:

"In all matters pertaining to the administration of the trust herein provided for, and in all matters pertaining to the distribution of the trust funds pursuant to the provisions of Item III, the decision of the majority of my said trustees, or the decision of the survivor, if but one survive, shall be final and conclusive. In making investments they shall not be confined to investments authorized by law for trustees, but shall have the right to exercise their judgment without restriction and to make any investments, and, generally, to deal with the trust estate as freely as I, myself, if living, might do, and particularly, they shall have the right to invest in the stocks, common or preferred, and the securities of corporations."

We find no authority in Item IV or any other part of the will authorizing the trustees to decide what constitutes income and what corpus. In the absence of such express authority the trustees did not have the authority to allocate stock dividends between corpus and income. All that Item IV of the will does is to give a majority of the trustees named the right to perform the administrative and ministerial acts authorized under the provisions of the will.

It is our conclusion that the stock dividends here involved, under the Cothran case, should be apportioned in accordance with the rule set forth therein.

The respondent filed a petition with this court pursuant to the provisions of Rule 8, Section 10, of this court, for permission to argue against the authority of the Cothran case and asks this court to modify or overrule that decision, holding that stock dividends and capital gains held in trust should be apportioned between the life tenants and the remaindermen. It was asserted in the petition that the decision was based upon a misinterpretation of earlier decisions of this court and because the adoption by the General Assembly of the Uniform Principal and Income Act, as is

contained in Section 67-501 et seq., of the 1967 Cumulative Supplement to the Code, providing for a treatment of capital gains and stock dividends different from the rule announced in the Cothran case, requires a review of such case to consider its modification to bring the common law rule in line with the statutory rule. The respondent argues that the Pennsylvania Rule, announced in the Cothran case, is unworkable and inequitable.

We have reviewed the Cothran decision in the light of the argument made by the respondent. Our decision in the Cothran case was the result of a careful consideration and analysis of previous decisions of this court. In the Cothran case we pointed out that the Pennsylvania Rule had been criticized and had been changed in some states by the adoption of the Uniform Principal and Income Act. In the face of the criticism made in the Cothran case of the Pennsylvania Rule, we felt that we would not be justified in overthrowing a rule established by our previous decisions, nor do we feel justified now in so doing. We adhere to the rule announced in the Cothran case. In this connection we point out that in accordance with the suggestion made in the Cothran case the General Assembly has adopted the Uniform Principal and Income Act. By the terms of the aforesaid act where an intent cannot be found in a will for the allocation of stock dividends and capital gains between the income beneficiaries and the remaindermen, the act allocates such, subsequent to the effective date thereof, to corpus. The rule applicable prior to such adoption is that set forth in the Cothran case.

It is contended by the respondent that even though stock dividends be treated as income such passes by Item III of the will to the children of Nelson B. Arrington and is not distributable to his estate. This contention is based on the provision of Item III of the will which provides that upon the termination of the trust "any accumulation of undistributed income shall be divided and distributed in the proportion of one-third to the issue of each

of my said sons, *per stirpes*." It is argued that since the stock dividends were never distributed to Nelson B. Arrington during his lifetime by the trustees and the same are in the hands of the trustees, such stock dividends represent accumulated undistributed income, the disposition of which is governed by the language of Item III of the will. In the case of *In re Walbridge's Will,* 192 Misc. 746, 80 N. Y. S. (2d) 676, it appears that the testatrix created a trust in favor of one Benjamin Woods for life, and to pay at his death the principal of said trust fund and "any undistributed income in equal shares" to nine named nephews and nieces. The question was the apportionment of the income between the estate of the life tenant and the remaindermen. The court held that income which had accrued to the life tenant of the testamentary trust, but which had not been paid to the life tenant at the time of his death, was payable to the life tenant's estate and not to the remaindermen under the provision of the trust that at the life tenant's death, the principal of the trust and any "undistributed income" should be paid to the remaindermen. In the cited case the court said: "If the words in the will 'undistributed income' were interpreted in their literal sense to mean all income in the hands of the trustee not yet paid over to the life tenant, the rights to the income would be dependent upon the punctuality of the trustee, and moreover, the provision would amount to an unlawful accumulation". The provision in Item III of the will for the payment of "any accumulation of undistributed income" means undistributed income which has been properly accumulated and not undistributed income which has accumulated by reason of the failure of the trustees to pay same over in accordance with the terms of the trust.

It is our conclusion that the stock splits and capital gains here involved should be treated as corpus of the trust created by John W. Arrington, and that stock dividends should be considered as income of the said trust and apportioned as such in accordance with the views hereinbefore expressed. It follows that the judgment of the lower court should be

and is affirmed in part and reversed in part and this case is hereby remanded to the lower court so that an accounting can be had in accordance with the rulings herein made.

No opinion is expressed as to the period of time to be covered by the accounting for the purpose of apportionment.

Reversed and remanded.

LEWIS and LITTLEJOHN, JJ., concur.

BUSSEY and BRAILSFORD, JJ., dissent.

BUSSEY, Justice (dissenting in part) :

I concur in the result reached in the opinion of the Chief Justice with respect to the stock splits and capital gains from the sale of stocks involved in the estate, but for numerous reasons, hereinafter set forth, dissent as to the disposition made of the stock dividends.

Unfortunately, the task of this court in reaching a just and proper decision in the instant controversy has been made more difficult by the fact that efforts of counsel below and on appeal seem to have been devoted much more to the trial and defense of the so-called Pennsylvania apportionment rule and the Cothran decision, 242 S. C. 80, 130 S. E. (2d) 177, than they have to developing the facts and real issues involved in the instant controversy. The record contains a great deal of evidence from experts in the fields of law, trusts, banking and corporate affairs, etc., showing rather clearly the great difficulties, expense and sometimes impossibility of complying with the Pennsylvania rule under modern day circumstances, as well as the inequities and injustices which frequently result from the application thereof.

The uncontradicted evidence, supported by legal research, clearly shows that however just and equitable the Pennsylvania rule may have been under the circumstances existing when it originated more than a century ago, it is under modern circumstances, for the most part, no longer a work-

able, equitable or just rule. As a result, this rule has been, by legislative act and/or judicial decision, repudiated throughout the United States and no vestige thereof seems to remain save in Mississippi, and South Carolina.

On the other hand, the record contains rather scanty evidence as to precisely what is or would be involved, or the precise results which be reached, should the apportionment rule be applied in the instant controversy. The record, nevertheless, contains enough, in my view, to show: (1) that there is no need to resort to the Pennsylvania rule set forth in the Cothran decision; (2) that under the facts of the particular case, it should not be applied.

When John W. Arrington died in 1938, his estate, composed of both personal property and realty, was appraised at a value in excess of $200,000, most of which passed to the trust with which we are here concerned, he having provided for his widow prior to his death by insurance and a trust fund created for her benefit. It is, I think, obvious that the testator was sufficiently wealthy that, even in that day of much lower taxation, he was naturally concerned with the impact of taxes. His three sons, who were named as executors and trustees, were all enjoying substantial incomes, both on the date of the testator's will and at the time of his death. The sizes of their respective estates indicate that they continued to do so throughout their lives. Under all of the attendant circumstances, it was only natural that the testator would desire to pass on to his grandchildren and/or his great grandchildren, tax free, a quite substantial trust estate. The present amount of the trust does not appear in the record, but inferentially, there are several million dollars involved.

The application of the Pennsylvania rule to the stock dividends accumulated in this trust would, I think, clearly subvert the real intention of the testator in several respects and bring about results clearly not intended or desired by him. The Pennsylvania rule of apportionment is an equi-

table rule of construction and is never resorted to except where the testator has failed to manifest an intention with respect to allocation between income and corpus, and has also failed to manifest an intention to vest a discretionary power in his trustees to determine what constituted income or corpus. The testator's intention does not have to be express or specific, it being sufficient that his intention be manifest. The testator's intention is to be gathered from the whole instrument, any doubtful language being considered in the light of the circumstances known to the testator at the time of its execution. His intention need not be declared in express terms, if it can be clearly inferred from the particular provisions and from the general scope of the will. *Spell v. Traxler,* 229 S. C. 466, 93 S. E. (2d) 601 (1956).

In my view, when all of the provisions and the general scope of the Arrington will are considered, the intention of the testator is clearly manifest, rendering really unnecessary any resort to the circumstances known to the testator at the time of its execution. But certainly, when it is considered as a whole and in the light of the financial circumstances of the testator at the time of execution, I cannot help but agree with the conclusion of the lower court that the testator manifested a clear intention to give his trustees the discretionary power, which they fully exercised, to determine what constituted income or corpus of the trust estate.

The opinion of the Chief Justice construes Item IV of the will as doing nothing more than giving a majority of the trustees named the right to perform simply administrative and ministerial acts authorized under the provisions of the will. Such construction, I think, treats as surplusage and ignores much of the language of Item IV, it being elementary that effect must be given to every part of a will, if practicable, in construing it, and, if possible by any reasonable construction, all clauses must be harmonized with each other and with the will as a whole.

Item IV makes specific reference to the decision of his trustees pertaining to the distribution of the trust funds pur-

suant to the provisions of Item III being final, which item, in turn, provides that upon the termination of the trust "* * * (T)he corpus of the trust estate, with any accumulation of undistributed income, shall be divided and distributed in the proportion of one third to the issue of each of my said sons, *per stripes.*"

The quoted language is specific and when considered in connection with the entire will, evinces, I think, a clear contemplation on the part of the testator that his trustees, who were also life beneficiaries would, in carrying out and effectuating the main theme of his will, from time to time accumulate and not distribute items which were or might be contended to be income.

In Item IV, after providing that any decision of the majority of the trustees or the survivor should be final and conclusive, the testator reverted to the general powers given to his trustees, including the power "* * * (G)enerally to deal with the trust as fully as I myself if living might do, and particularly they shall have the right to invest in stocks, common or preferred, and the securities of corporations." Item IV is not the only place in the will where the trustees are given the right to deal with the estate as freely as the testator himself could have done if living.

Item II of the will, quoted only in part in the opinion of the Chief Justice, gives broad and comprehensive powers to the trustees and contains, inter alia, the following "* * * (T)o compromise, adjust, and settle claims in favor of, or against the estate, and generally to do all things which I myself might do if living."

Item IV restates, and therefore emphasizes, the testator's intention, already specifically expressed in Item II, to give his trustees the power to do anything with the estate which he himself could have done if still living. This is a testamentary trust and the testator could have revoked it in its entirety at any time, while living. It follows that his power to allocate to corpus whatever he chose was totally unlimited,

and he gave to his trustees the power to do any and all things which he could himself have done if still living. His intention to give his trustees broad and unlimited powers is further evinced by a codicil to the will containing the following language:

"I direct that all specific bequests provided for be payable altogether as to time and amounts in the discretion of my executors or trustees, my object being that my wife shall first be provided for in such amount as they think sufficient."

When the entire instrument is considered in the light of tax factors involved and the financial circumstances of the tetator and all members of his family, I cannot help but conclude that the testator not only intended that his affluent sons should have the power to accumulate and allocate to the corpus whatever they saw fit, including capital gains from the sale of stock, stock splits and stock dividends, and, moreover, contemplated that they would do so, and, hence, the provision in Item III for the distribution of any accumulated undistributed income in the same manner as the corpus.

I conclude that the estate here has been treated by the trustees in accordance with the manifest intention of the testator and reach a discussion of the Cothran decision only because a majority of the court is of the view that such is controlling with respect to at least the stock dividends in the instant case. We are asked by the respondent trustee to overrule the Cothran decision. The factual showing made, as well as the briefs of counsel, to my mind require, on the part of this court, at least a careful analysis and reexamination of that decision, which I hall now undertake.

The appeal in that decision reached us on the pleadings without the benefit of testimony (such as the record here contains), as to the practical difficulties, inequities, impossible situations, and unwarranted financial burden on the trust estate itself, which frequently result from efforts to apply the apportionment rule in modern day trust adminis-

trations. Unfortunately, that case was not as fully briefed as it might have been. A petition for rehearing brought to the attention of this court matters not pointed out in the original briefs, and two members of this court were of the view that a rehearing should have been granted.

Of course, no one can now say with any degree of certainty what the result would have been had the records and briefs been as full and complete in the *Cothran* case as they are in the instant case. I consider it more than likely however, that in such event the opinion in the *Cothran* case would have at least been to some extent modified. The opinion as filed in that case, as I construe it, was based primarily on the doctrine of *stare decisis,* rather than any logic, justice or equity of the Pennsylvania rule. The opinion has clear support in prior decisions of the court, but it is certain that the court had not theretofore broadly, or *eo nomine,* adopted the Pennsylvania rule, although it had in effect, applied it to the circumstances of the cases upon which Cothran was predicated. In Cothran we referred to criticism of the Pennsylvania rule, but applied it to the extent that it had been applied prior thereto in this jurisdiction.

A review of the authorities from other jurisdictions will show the many, many problems which the courts have been confronted with and have endeavored to solve in the application of the Pennsylvania rule to modern day trust transactions. They have been required to evolve many subsidiary or ancillary rules in an effort to apply it to given situations with any degree of justice or equity. Fortunately, we have not been so far confronted with these difficult and complicated problems and consequently have not been called upon to adopt, follow or reject the rules of law evolved by other courts in their efforts to justly apply the Pennsylvania rule. The record here strongly indicates that the inevitable result of any broad adherence to the Pennsylvania rule in this case will be the creation of many problems which trustees, and eventually this court, will have to endeavor to solve in an effort to do justice.

The Pennsylvania rule is a rule of construction and not a rule of property. *Re Allis' Will,* 6 Wis. (2d) 1, 94 N. W. (2d) 226, 69 A. L. R. (2d) 1128 (1959) ; *Re Catherwood's Trust,* 405 Pa. 61, 173 A. (2d) 86 (1961) ; *Re Arens,* 41 N. J. 364, 197 A. (2d) 1 (1964). In the circuit court decree in *Wallace v. Wallace,* 90 S. C. 61, 72 S. E. 553, quoted in the opinion in the *Cothran* case, the rule is referred to as "the equitable rule of apportionment." In brief, the Pennsylvania rule as originally adopted was simply a rule of construction by which the court attempted to do equity between life beneficiaries and the remaindermen, where the trust instrument was completely silent as to the intention of the trustor with respect to allocation between corpus and income. Under the circumstances existing at the time of its origin, the rule was simple in application, reached an equitable result, and a result which most likely the trustor would have intended had he seen fit to express an intention thereabout. In Cothran, instead of the record and briefs showing any real difficulty or inequity from the application of the rule, it was stipulated that it would only be necessary to have an accounting in accordance with applicable legal principles "with reference to which little controversy, if any, is anticipated." In all of our prior decisions upon which the Cothran decision was based, apportionment between corpus and income posed no difficulty, worked no patent inequity, and it could not be said that the result reached was at variance with what the trustor would likely have desired had he seen fit to more clearly express an intention.

It is my considered view that if it be necessary to resort to the Cothran decision to decide this controversy, that such decision should not be followed beyond the absolute requirements of the doctrine of *stare decisis*. It should not here be broadly reaffirmed and, in effect, extended beyond the scope of that case. In brief, if the doctrine of that case is to be followed, it should be restricted to cases where the application of the so-called Pennsylvania rule is relatively simple and feasible, in which no substantial inequity to the remain-

dermen would result, and, moreover, to cases where it is at least reasonably clear that the result reached would not be the very last thing that the testator would have wanted had he seen fit to more clearly express his intention.

In the instant case, the record sufficiently shows, I think, that considerable difficulty would be encountered in attempting to apply the rule; that quite substantial expense to the estate would be involved in its application, and that in some instances portions of the estate would likely be heavily burdened with taxes, results clearly not contemplated or intended by John W. Arrington. Could he possibly have foreseen any such result, the only reasonable inference from the will itself and the record is that he would have been quite specific in using language to insure avoiding such a result.

There are additional reasons why the appellant should not here prevail. It is my considered view that Polly P. Arrington has no standing in law or equity to challenge the decision of the lower court. She and she alone challenges the holding. All other parties, whether remaindermen, or heirs, or devisees of life tenants, seem completely satisfied with the handling of the trust estate by the several trustees, and the disposition of the matter by the lower court..

Let us consider precisely the situation of the appellant. Her only interest in the controversy is as a devisee under the will of her husband, Nelson P. Arrington, the last of the three trustee brothers to die. It is elementary that as such she can have no higher standing or right than did Nelson Arrington at the date of his death. Nelson Arrington served as trustee longer than anyone else. The trust had been in existence for more than fifteen years before the present trustee had any connection therewith. Nelson Arrington occupied the position of both a trustee and a life beneficiary. He obviously attempted to carry out what he construed to be the intent of his father and throughout participated in allocating the capital gains, stock splits and stock dividends to the corpus of the estate.

Quite pertinent to the equities of the case, I think, is the fact that when Nelson Arrington died he left an estate in excess of $800,000, and left a will providing for his widow, the appellant, Polly P. Arrington. Nelson Arrington, as a life beneficiary and as a trustee over a period of more than twenty years, having treated the stock dividends, etc. as corpus, it is reasonable to infer that, in providing for his widow in his will, it was contemplated by him that a one third share of these stock dividends would pass to his children as remaindermen under the trust estate, tax free.

Following the death of Nelson P. Arrington, his widow now seeks to repudiate what he has done, as trustee and life beneficiary, and at the expense of her children obtain greater wealth than was ever contemplated by Nelson Arrington. She does so despite the inequities resulting to her own children and the other parties to this action; and without regard to the financial burden which will be cast upon the estate in complying with the apportionment rule, or the inequities and burden resulting to the present trustee in being required to undo and reconstruct what Nelson P. Arrington did, or participated in doing over a period of some twenty-six years, the greater portion of which elapsed prior to the present trustee being appointed a co-trustee. The so-called Pennsylvania rule is supposed to be an equitable rule of apportionment. If appellant has any equity on her side, the record does not disclose it.[1]

The complaint in this action alleged, *inter alia,* that the three trustee brothers having treated the gains and stock dividends as corpus, those claiming under them were estopped to question their treatment of such items. Such plea was, I think, clearly well founded under all applicable principles of law. The lower court found it unnecessary to pass

---

[1] Appellant is depicted in the inequitable role in which her appeal, of necessity casts her; no personal reflection being intended. In fairness to her, it has come to the attention of the court, dehors the record and subsequent to the filing of opinions herein, that appellant in fact desires neither personal gain nor inequitable results, but appealed solely on the advice of counsel that an appellate decision of the issues herein was essential to the determination of certain ancillary questions.

on the issue of estoppel, and such has not been argued before this court. We reach the issue, however, for two reasons. We are always at liberty to affirm the judgment of the lower court on any ground appearing in the record. Supreme Court Rule No. 4 (8). Additionally, there are minors involved, individually and as a class representing other minor great grandchildren of the testator. They have not appealed, the lower court decision being favorable to them. It is the duty of this court to see that the rights of minors and incompetents are protected. *Cumbie v. Cumbie,* 245 S. C. 107, 139 S. E. (2d) 477 (1964).

To state the question narrowly and to the point, is one claiming under a trustee of a trust estate estopped to challenge the good faith acts of the trustee? Few courts have apparently had occasion to consider the precise question, but all decisions coming to the attention of the writer are to the effect that such a person is estopped. There are at least two decisions in which the trustee was not only a trustee but also a life beneficiary, as was Nelson Arrington here. In both instances the person claiming under the trustee was held to be barred. *Scullin v. Clark,* 242 S. W. (2d) 542, 29 A. L. R. (2d) 1024 (Mo. 1951); *Re Lindsay's Will,* 11 Misc. (2d) 374, 109 N. Y. S. (2d) 600 (1952). Both of these cases involved allocations as between principle and income. In the case of *Hopkins v. Cleveland Trust Co.,* 163 Ohio St. 539, 127 N. E. (2d) 385 (1955), the Supreme Court of that state held,

"It is a well established principle of law that a *sui juris* beneficiary or a co-trustee who consents to, confirms or acquiesces in a claimed breach of trust in making certain allocations to corpus rather than income is estopped to claim a breach of trust growing out of the action of the trustee in that regard."

Research discloses to me no authority to the contrary to those just above cited. While not directly in point, it was the view of the court in *Blake v. Jones,* 8 S. C. Eq. (Bail.)

141 (1830), that an executor who takes custody of property in his representative capacity is estopped to deny that it is property of the estate. It would seem to follow logically that, were Nelson Arrington today alive, he would be estopped to belatedly claim as income, for his personal benefit, assets which he so long regarded and treated as corpus of the estate. His widow claiming under him, of course, stands in no better position.

In the *Blake* case, just above cited, the court was concerned with the title to certain stock issued to a Major Goodwyn as administrator of his wife's estate. We quote the following from the opinion of the chancellor, concurred in and affirmed on appeal,

"Indeed, if it were, expressly shown, that the property, for which this stock was obtained, was wholly and exclusively Major Goodwyn's, I should be inclined to think that his taking the stock, as administrator, made it her estate. Certainly, it would be evidence enough against him.

The conclusion would be, that he intended, in this way, to make a provision for his children."

In the instant case, aside from the manifest intention of the testator, the conclusion is inescapable that Nelson P. Arrington, as life beneficiary entitled to one third of the income, by his treatment of the stock dividends, intended no benefit to himself or his widow therefrom, but, to the contrary, intended that his interest in such pass to his children, tax free, upon termination of the trust.

To summarize, my conclusions are as follows:

1. This trust estate has been administered in accordance with the manifest intention of the testator.

2. There is, accordingly, no need to resort to the Cothran decision, but if resort thereto be had, it should not be followed or applied beyond the requirements of the doctrine of *stare decisis,* and, hence, has no application to the instant case which is clearly distinguishable in fact and in equity.

3. That, in any event, the appellant, Polly P. Arrington, is estopped to challenge the acts and determination of her husband, Nelson P. Arrington, under whose will she claims.

If the appellant be not completely estopped, I think she should at least be estopped from requiring the trustee to investigate and unravel the many transactions which took place over a period of more than fifteen years prior to the bank becoming a trustee. All parties are now deprived of the benefit of the testimony of the three brothers as to how and why they handled the various transactions as they did.

The rationale of the Pennsylvania case of *Re Wilbur's Estate,* 334 Pa. 45, 5 A. (2d) 325 (1939), clearly supports the conclusion that the appellant here should at least be barred from requiring the present trustee to go back of the date of its appointment and apply the apportionment rule to transactions consummated prior to its appointment.

I would affirm the judgment of the lower court.

BRAILSFORD, J., concurs.